[Civ. No. 39770. First Dist., Div. Two. June 6, 1978.]

MELANIE BELLAH et al., Plaintiffs and Appellants, v.
DANIEL P. GREENSON, Defendant and Respondent.

**Counsel**

Melanie Bellah, in pro. per., Ellen J. Beilock and Mary S. Schneider for Plaintiffs and Appellants.

Hanna, Brophy, MacLean, McAleer & Jensen, Donald R. Brophy, Frank B. Hugg, Siegfried D. Hesse, Robert P. Brorby and Dodge, Reyes, Brorby, Randall, Titmus & Driscoll for Defendant and Respondent.

Severson, Werson, Berke & Melchior, Kurt W. Melchior, Nicholas S. Freud, Jan T. Chilton, Lawrence A. Hobel and Wainer & Stone as Amici Curiae.

**OPINION**

**ROUSE, J.**—Plaintiffs appeal from an order sustaining defendant's demurrer without leave to amend.[1] For reasons set forth herein, including an explanation contained in footnote 1, we amend that order and affirm the judgment of dismissal.

Plaintiffs, Melanie and Robert Bellah, are the heirs of Thomasin (Tammy) Bellah, their daughter, who succumbed to a self-inflicted overdose of pills on April 12, 1973. Tammy had been under the care of defendant, Daniel Greenson, a psychiatrist in Berkeley, for an unspecified period of time prior to her death. It appears that, during that time, defendant concluded that Tammy was disposed to suicide, and that he recorded his conclusion in his written notes. At the time of Tammy's death, plaintiffs were temporarily living in Princeton, New Jersey, where they were spending the 1972-1973 academic year.

On April 11, 1975, some two years after Tammy's death, plaintiffs instituted the present action for wrongful death, alleging that defendant had failed to personally take measures to prevent Tammy's suicide; that he had failed to warn plaintiffs of the seriousness of Tammy's condition and of circumstances which might cause her to commit suicide; and that he had failed to inform plaintiffs that Tammy was consorting with heroin addicts in plaintiffs' home. Plaintiffs' complaint purported to state two causes of action, one based upon simple negligence, and one based upon defendant's negligent performance of his contract with plaintiffs to care for their daughter, which contract allegedly contained the implied term that defendant would use reasonable care to prevent Tammy from harming herself or the property of another. Plaintiffs sought to recover damages which would compensate them for Tammy's wrongful death and for certain thefts from their home which were apparently committed by the heroin addicts with whom Tammy was consorting.

---

[1]Apparently, no judgment of dismissal was ever entered on the demurrer interposed by defendant. Plaintiffs purport to appeal, also, from the order denying their motion for reconsideration, which, of course, is nonappealable. In the interest of justice and to prevent further delay, we will deem the order sustaining defendant's demurrer to incorporate a judgment of dismissal and thus interpret plaintiffs' notice of appeal as applying to such dismissal. Accordingly, the order sustaining the demurrer without leave to amend is modified by adding thereto a paragraph dismissing the action. (*California State Employees' Assn.* v. *State of California* (1973) 32 Cal.App.3d 103, 106, fn. 1 [108 Cal.Rptr. 60].)

Defendant demurred generally to the complaint and also raised the defense of the statute of limitations by way of demurrer. The demurrer was sustained without leave to amend. Plaintiffs' motion for reconsideration was denied on October 1, 1975, and the present appeal followed.

■ The primary issue to be decided on appeal from a judgment rendered following the sustaining of a demurrer is whether, considering all allegations in the complaint to be true, plaintiffs have stated facts sufficient to entitle them to some relief. (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216]; accord, *Landeros* v. *Flood* (1976) 17 Cal.3d 399, 407-408 [131 Cal.Rptr. 69, 551 P.2d 389]; *People* ex rel. *Busch* v. *Projection Room Theater* (1976) 17 Cal.3d 42, 48 [130 Cal.Rptr. 328, 550 P.2d 600]; *Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 123 [109 Cal.Rptr. 799, 514 P.2d 111].) In the present case, a second issue is whether the action is barred by the statute of limitations, as alleged in the demurrer below. (*Zapata* v. *Meyers* (1974) 41 Cal.App.3d 268, 272 [115 Cal.Rptr. 854]; *Anderson* v. *McNally* (1957) 150 Cal.App.2d 778, 783 [310 P.2d 975].)

■ In order to state a cause of action for negligence, the complaint must allege facts sufficient to show a legal duty on the part of the defendant to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury. ■ The duty of care is always related to some circumstance of time, place and person. (*United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 594 [83 Cal.Rptr. 418, 463 P.2d 770]; *DeSuza* v. *Andersack* (1976) 63 Cal.App.3d 694, 701-702 [133 Cal.Rptr. 920].) The determination of whether a duty exists is primarily a question of law. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36].) Thus, in the present case, we must determine whether plaintiffs have alleged facts sufficient to give rise to a duty on the part of defendant to take steps to prevent Tammy from committing suicide or to advise plaintiffs about the existence of conditions which might cause Tammy to take her own life, so that they could take such steps.

It has been held that the requisite special relationship does exist in the case of a patient under the care of a psychiatrist and that a psychiatrist who knows that his patient is likely to attempt suicide has a duty to take preventive measures. Thus, in *Vistica* v. *Presbyterian Hospital* (1967) 67 Cal.2d 465 [62 Cal.Rptr. 577, 432 P.2d 193], and *Meier* v. *Ross General Hospital* (1968) 69 Cal.2d 420 [71 Cal.Rptr. 903, 445 P.2d 519], it was held that a wrongful death action would lie where the plaintiffs' decedent

committed suicide while undergoing psychiatric treatment in a hospital. In *Vistica,* the cause of action was held to exist against the hospital, which was the only named defendant, and in *Meier,* it was found to exist against both the hospital and the decedent's treating physician.

*Vistica* was cited in *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 436 [131 Cal.Rptr. 14, 551 P.2d 334], for the proposition that a *hospital* must exercise reasonable care to control the behavior of a patient which may endanger other persons.

However, on their facts, *Vistica* and *Meier* are readily distinguishable from the case at hand. Each involved situations where the patient was confined in a hospital at the time of the event which constituted the basis for subsequent litigation. Obviously, the duty imposed upon those responsible for the care of a patient in an institutional setting differs from that which may be involved in the case of a psychiatrist treating patients on an out-patient basis.

■ Here, the complaint alleged the existence of a psychiatrist-patient relationship between defendant and Tammy, knowledge on the part of the defendant that Tammy was likely to attempt suicide, and a failure by defendant to take appropriate preventive measures. We are satisfied that these allegations are sufficient to state a cause of action for the breach of a psychiatrist's duty of care towards his patient. The nature of the precautionary steps which could or should have been taken by defendant presents a purely factual question to be resolved at a trial on the merits, at which time both sides would be afforded an opportunity to produce expert medical testimony on the subject. From the face of plaintiffs' complaint, we are unable to determine whether defendant did or did not take preventive steps which were consonant with good medical practice in the community. However, that question is not before us in the demurrer stage of these proceedings.

We disagree with plaintiffs in their contention that *Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d 425, created a duty on the part of the defendant in this instance to breach the confidence of a doctor-patient relationship by revealing to them disclosures made by their daughter about conditions which might cause her to commit suicide. In *Tarasoff,* the California Supreme Court held that, under certain circumstances, a therapist had a duty to warn others that a patient under the therapist's care was likely to cause personal injury to a third party. There the court said, "Although . . . under the common law, as a general

rule, one person owed no duty to control the conduct of another [citations], nor to warn those endangered by such conduct [citations], the courts have carved out an exception to this rule in cases in which the defendant stands in some special relationship to either the person whose conduct needs to be controlled or in a relationship to the foreseeable victim of that conduct [citation]." (P. 435.) Applying that exception to the facts of *Tarasoff,* the court held that where a therapist knows that his patient is likely to injure another and where the identity of the likely victim is known or readily discoverable by the therapist, he must use reasonable care to prevent his patient from causing the intended injury. Such care includes, at the least, informing the proper authorities and warning the likely victim. However, the court did not hold that such disclosure was required where the danger presented was that of self-inflicted harm or suicide or where the danger consisted of a likelihood of property damage. Instead, the court recognized the importance of the confidential relationship which ordinarily obtains between a therapist and his patient, holding that ". . . the therapist's obligations to his patient require that he *not disclose a confidence unless such disclosure is necessary to avert danger to others . . . .*" (*Tarasoff, supra,* p. 441; italics added.)

Far from imposing a duty to warn others of the likelihood of any and all harm which might be inflicted by a patient, *Tarasoff* requires that a therapist *not* disclose information *unless* the strong interest in confidentiality is counterbalanced by an even stronger public interest, namely, safety from violent assault. (*Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d at pp. 440-442.)

The imposition of a duty upon a psychiatrist to disclose to others vague or even specific manifestations of suicidal tendencies on the part of the patient who is being treated in an out-patient setting could well inhibit psychiatric treatment. In his amici brief, counsel points out that the dynamics of interaction between the psychotherapist and the patient seen in office visits are highly complex and subtle. Intimate privacy is a virtual necessity for successful treatment. Were it not for the assurance of confidentiality in the psychotherapist-patient relationship, many in need of treatment would be reluctant to seek help. Even those who do seek help under such circumstances may be deterred from fully disclosing their problems. An element usually assumed essential is the patient's trust that matters disclosed in therapy will be held in strict confidence. (See Fleming & Maximov, *The Patient or His Victim: The Therapist's Dilemma* (1974) 62 Cal.L.Rev. 1025, 1041.)

■ We conclude that *Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d 425, requires only that a therapist disclose the contents of a confidential communication[2] where the risk to be prevented thereby is the danger of violent assault, and not where the risk of harm is self-inflicted harm or mere property damage. We decline to further extend the holding of *Tarasoff.*

There remains the question of whether the trial court was correct in ruling that plaintiffs' cause of action was barred by the statute of limitations since the action was not commenced within the time specified in section 340.5 of the Code of Civil Procedure. At all times relevant to this action, section 340.5 provided, in part, as follows: "In an action for injury or death against a physician . . . based upon such person's alleged professional negligence, . . . or for error or omission in such person's practice," the action must be commenced "four years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever first occurs. This time limitation shall be tolled for any period during which such person has failed to disclose any act, error, or omission upon which such action is based and which is known or through the use of reasonable diligence should have been known to him." (Stats. 1970, ch. 360, § 1.)

■ Tammy's death occurred on April 12, 1973. This action was commenced some two years later, on April 11, 1975. Thus, if plaintiffs discovered or through the use of reasonable diligence should have discovered their injury at the time of Tammy's suicide or within one year thereafter, their action was barred by the one-year provision of section 340.5. Plaintiffs contend that no such bar arose because the "discovery of the injury," within the meaning of the statute, can only be deemed to have occurred when the plaintiffs had reason to know that they had a cause of action arising from Tammy's death. Plaintiffs assert that at all times prior to December 23, 1974, when the California Supreme Court rendered its initial decision in *Tarasoff* v. *Regents of University of*

---

[2]Of course, section 1024 of the Evidence Code *permits* a psychiatrist to disclose to authorities the contents of a confidential communication where he has reason to believe that his patient presents a danger to himself or to the person or property of another and that disclosure of the communication is necessary to prevent the threatened danger. The *Tarasoff* court specifically declined to base its finding of a duty to warn on section 1024; rather, the court noted that that section merely served to defeat any argument as to the paramount importance of confidentiality in the therapist-patient relationship. (See *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 441, fn. 13 [131 Cal.Rptr. 14, 551 P.2d 334].)

*California* (S.F. 23042),[3] the state of the law was such that plaintiffs reasonably believed that they had no basis upon which to attempt to impose liability upon defendant Greenson. Plaintiffs argue that the *Tarasoff* case created their cause of action against Greenson and that the one-year period specified in section 340.5 did not begin to run until the rendition of the initial decision in that case.

Plaintiffs' argument is not persuasive. A cause of action for the breach by a medical practitioner of the duty of care owed to his patient has long existed in this state. It follows that plaintiffs' cause of action against defendant was not newly created in *Tarasoff,* but had existed for many years. Even if plaintiffs were correct in their assertion that *Tarasoff* offered them a new theory upon which to base their claim, it is settled that the retroactive operation of a judicial decision will not revive a cause of action previously barred by the statute of limitations. (*Monroe v. Trustees of the California State Colleges* (1971) 6 Cal.3d 399, 406 [99 Cal.Rptr. 129, 491 P.2d 1105].)

■ Plaintiffs next contend that the statute of limitations was tolled under the last sentence of section 340.5 until August 21, 1975, because it was not until that date that they were allowed to examine defendant's medical records, at which time they learned that on December 11, 1972, defendant had concluded that Tammy was disposed to suicide. They argue that prior to August 21, 1975, defendant never advised them that he had formed any such opinion concerning Tammy and that this lack of disclosure prevented the statute of limitations from running. Plaintiffs concede that they were aware of Tammy's suicide gesture in December 1972 and that they discussed it over the telephone with defendant. However, they deny that defendant ever told them that he attached any real importance to the gesture or had concluded that Tammy was capable of a serious attempt at suicide, as opposed to a mere gesture.

Plaintiffs' contention is untenable. In *Sanchez v. South Hoover Hospital* (1976) 18 Cal.3d 93 [132 Cal.Rptr. 657, 553 P.2d 1129], the California Supreme Court held that under the pre-1975 version of section 340.5 of the Code of Civil Procedure, which is here applicable, the tolling provision contained in the last sentence of the statute applied only to the

---

[3]The Supreme Court granted a rehearing in *Tarasoff* on March 12, 1975, thereby vacating the original decision. The final Supreme Court decision in *Tarasoff* was rendered on July 1, 1976. (*Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d 425.)

four-year and not to the one-year limitations period. The court reasoned that to hold that the tolling provision applied to the one-year period would produce a result at odds with common sense, since the mere fact of nondisclosure by the physician would indefinitely suspend the period within which the plaintiff could elect to bring suit even though the plaintiff had actually discovered the basis of his action by other means or could have done so by the exercise of reasonable diligence. (P. 98.) The *Sanchez* court pointed out that "... once a plaintiff is placed on 'inquiry,' he is, of course, free to sue immediately and thereby to invoke court sanctions, if necessary, against any defendant who seeks to avoid the discovery process." (P. 100.) The court held that, since she had not filed suit within one year of her release from the hospital, the plaintiff was barred by the one-year period of limitations specified in section 340.5 and that the running of such period was not tolled by the defendants' failure to disclose to the plaintiff the facts upon which her complaint was based.

In the instant case, plaintiffs' daughter committed suicide while under the care of a psychiatrist who had been treating her at the time of a prior suicide gesture and who had continued to treat her thereafter. The events surrounding Tammy's death were sufficient to cause plaintiffs to inquire into the circumstances about which they now complain. They were free to bring suit immediately, pursue discovery and avail themselves of the opportunity to examine defendant's records. It follows that the one-year period specified in section 340.5 was not tolled by defendant's failure to disclose his professional opinion that Tammy was suicidally disposed and that plaintiffs' action was barred by their failure to bring suit within one year after Tammy's death.

■ Plaintiffs next contend that since plaintiff Melanie Bellah was a married woman at all times relevant to this action, the disability of coverture applied. They correctly point out that, prior to its deletion effective January 1, 1976, subdivision (a), section 352, of the Code of Civil Procedure, provided that "If a person entitled to bring an action ... be, at the time the cause of action accrued ... 4. A married woman, and her husband be a necessary party with her in commencing such action; the time of such disability is not a part of the time limited for the commencement of the action." Plaintiff Melanie Bellah asserts that since her husband was a necessary party to an action to recover damages for Tammy's wrongful death (see Code Civ. Proc., § 377; *Watkins* v. *Nutting* (1941) 17 Cal.2d 490, 498 [110 P.2d 384]), the statute of limitations did not begin to run against her until April 11, 1975, at which time her husband joined with her in commencing the instant action.

This argument must fail for two reasons: first, as the trial court aptly pointed out at the hearing on the demurrer, the complaint contains no allegation that Mr. Bellah was ever, at any time, unwilling to join as a plaintiff in the action. Second, even assuming that, initially, Mr. Bellah was unwilling to join as a plaintiff in the action, under the provisions of section 382 of the Code of Civil Procedure, Mrs. Bellah was entitled to commence the wrongful death action herself and name her husband as a defendant. Under these circumstances, we conclude that Melanie Bellah's married status at no time constituted a genuine disability to the commencement of the instant action.

· Finally, plaintiffs contend that since they attempted to plead negligent breach of contract, the instant action was one based upon an oral contract and was, therefore, subject to the two-year statute of limitations specified in section 339 of the Code of Civil Procedure. Thus, plaintiffs argue that Tammy was, in effect, a third party beneficiary of defendant's oral contract with plaintiffs and that an implied term of said contract was that he would warn plaintiffs if he had reason to believe that Tammy might harm herself.

We do not agree. ■ It is settled that an action against a doctor arising out of his negligent treatment of a patient is an action sounding in tort and not one based upon a contract. (*Stafford* v. *Shultz* (1954) 42 Cal.2d 767, 775 [270 P.2d 1]; *Huysman* v. *Kirsch* (1936) 6 Cal.2d 302, 306 [57 P.2d 908]; *DeVault* v. *Logan* (1963) 223 Cal.App.2d 802, 806 [36 Cal.Rptr. 145].)

The order sustaining the demurrer without leave to amend is modified by adding thereto a paragraph dismissing the action. The judgment of dismissal is affirmed.

Taylor, P. J., and Kane, J., concurred.

A petition for a rehearing was denied July 6, 1978, and appellants' petition for a hearing by the Supreme Court was denied August 3, 1978.