Patricia **FREEMAN**, Appellant,

v.

**ERNST & YOUNG**, Appellee.

No. 93–489.

Supreme Court of Iowa.

May 25, 1994.

---

John Riccolo and David L. Baker of Riccolo & Baker, P.C., Cedar Rapids, for appellant.

J. Richard Johnson of White & Johnson, P.C., Cedar Rapids, David J. Tocco, Cleveland, OH, and Kathryn A. Oberly and Thomas L. Riesenberg, Washington, DC, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

TERNUS, Justice.

This appeal arises out of a negligence action brought by the purchaser of a video rental business against the employer of the accountant who advised her concerning the purchase. The district court found that both the accountant and the seller, a released party, were negligent. Fault was apportioned between them and judgment entered against the defendant for its proportionate share of the damages.

The buyer appeals from the finding of the district court that the seller was at fault. Defendant cross-appeals the court's calculation of damages. We reverse and remand on the appeal and affirm on the cross-appeal.

I. *Background Facts and Proceedings.*

In 1987, Patricia Freeman negotiated with Emmett Neenan to purchase his video rental business. The business was incorporated and Neenan was the sole shareholder. Freeman was the store's manager and had worked there for several years.

In a written proposal to Freeman, Neenan offered to sell her the business for $225,000. He proposed that Freeman pay $195,000 on contract and $30,000 in cash. Neenan stated in this proposal that "([f]or $30,000.00 you can buy this store that will 'care' for you the rest of your life). It will make all your payments!"

Freeman told Neenan that her attorney had advised her to speak with an accountant about the value of the business. Neenan suggested that Freeman talk to his accountant, Jim Brems, an employee of defendant, Ernst & Young. Brems had acted as the accountant for the video business and had prepared its tax returns for several years. They arranged a meeting between Brems, Neenan, Freeman and Freeman's husband.

At this meeting several items regarding the sale of the business were discussed: (1) a noncompete clause; (2) bookkeeping statements; (3) tax consequences of the sale; (4) corporate liability; (5) the value of the business; and (6) payment of the accountant fees for Brems. Brems told Freeman that the business was worth $225,000 and that he thought this would be a good deal for her. Further, Brems said the business would pay for itself and generate a salary for Freeman. Neenan and Freeman agreed to split the cost of Brems' fees.

Freeman reached an agreement with Neenan to purchase the entire stock of the corporation for $30,000 down and $142,500 payable in monthly installments. Freeman also agreed to pay Neenan $60,000 for a covenant not to compete, also payable in monthly installments.

The business did not prove as profitable as Freeman had been told to expect. Freeman had to put $7,000 of her own money into the business and was never able to pay herself a salary. The business finally collapsed in February of 1990. Freeman incurred expenses of $2,900 when the business failed.

To avoid further liability to Neenan under the contract, Freeman transferred the business back to him. As part of the transfer agreement, Freeman released Neenan from any claim arising out of the 1987 purchase agreement. Freeman then sued Ernst & Young (defendant), alleging that Brems was negligent and that as a result of his negligence, she had suffered damages.

After a bench trial the court found that the actual value of the business was only $60,000. The trial court also found that Brems was negligent in making the representations to Freeman concerning the business's worth and that the transaction would cash flow. The court determined that Freeman suffered the following losses: (1) $30,000 down payment; (2) $96,000 in monthly payments; (3) $7,000 for corporate expenses she contributed; (4) $2,900 for expenses incurred when the business collapsed; and (5) $45,000 for lost wages. These losses totaled $180,900.

The district court further found that Neenan was seventy-five percent at fault, defendant was twenty-five percent at fault, and Freeman was zero percent at fault. Accordingly, the court entered judgment against the defendant for twenty-five percent of the total damages or $45,225. Freeman appealed. Defendant cross-appealed.

## II. *Comparative Fault of Neenan.*

█ Freeman's complaint on appeal is that the trial court erred in assessing fault against Neenan for two reasons. First, Freeman argues that Neenan's liability to her rested on a theory of fraud. Since fraud is not "fault" under Iowa Code chapter 668, Freeman contends that no percentage of fault could be attributed to Neenan. She also claims that the defendant's failure to plead Neenan's fault as an affirmative defense or to at least raise this issue during pretrial proceedings prevented the court from considering this issue at trial. Because we agree that Neenan's liability to Freeman is not "fault" under the Comparative Fault Act, chapter 668, we do not consider whether the issue of Neenan's fault was adequately raised.

Under chapter 668 the court, if there is no jury, must apportion damages among all "parties" at "fault." Iowa Code § 668.3(2) (1993). A "party" includes a person who has been released. *Id.* § 668.2. No one disputes that Neenan is a released party. However, Freeman does dispute that Neenan was at "fault."

Section 668.1 defines "fault" to mean

one or more acts or omissions that are in any measure negligent or reckless towards the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty. . . .

*Id.* § 668.1. Unfortunately, the trial court did not specify the nature of Neenan's liability in its Findings of Fact, Conclusions of Law and Rulings. Freeman filed a rule 179(b) motion challenging the court's assessment of fault against Neenan. *See* Iowa R.Civ.P. 179(b). The defendant resisted Freeman's motion, arguing that Freeman "could have stated causes of action against Mr. Neenan for negligence, negligent misrepresentation, and breach of warranty." The court overruled Freeman's motion "for the reasons set forth in defendant's resistance," without specifying which, if any, of the theories advanced by defendant was the basis for the court's finding that Neenan was at fault. In the future, appellate review would be facilitated if, in cases tried to the court, the court would clearly state the theory of liability and factual basis for assessing fault against a released party.

On appeal, defendant relies only on a theory of negligent misrepresentation to support the finding of fault on the part of Neenan. Freeman argues that she would not have had a viable claim against Neenan under this theory and that her only claim against Neenan would be for fraudulent inducement. We have held that chapter 668 does not cover fraud actions. *Tratchel v. Essex Group, Inc.,* 452 N.W.2d 171, 181 (Iowa 1990). Therefore, if Freeman is correct that the only claim she would have against Neenan is for fraud, the Comparative Fault Act does not apply. We now examine whether Freeman would have had a claim against Neenan for negligent misrepresentation.

In Iowa the tort of negligent misrepresentation finds its genesis in section 552 of the Restatement (Second) of Torts. *Beeck v. Kapalis,* 302 N.W.2d 90, 96–97 (Iowa 1981); *Ryan v. Kanne,* 170 N.W.2d 395, 402 (Iowa 1969). Section 552 details in pertinent part the necessary proof for a claim of negligent misrepresentation as follows:

One who, in the course of his business, profession, or other employment, or in any

other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552 (1977).

In applying the tort of negligent misrepresentation, we have distinguished misrepresentations made by persons engaged in the business or profession of supplying guidance to others from misrepresentations made during commercial transactions where the parties are dealing at arm's length. *See Haupt v. Miller*, 514 N.W.2d 905, 910 (Iowa 1994); *Meier v. Alfa–Laval, Inc.*, 454 N.W.2d 576, 581 (Iowa 1990). We have held that the tort of negligent misrepresentation applies only to those defendants in the profession or business of supplying information or opinions. *Haupt*, 514 N.W.2d at 910; *Meier*, 454 N.W.2d at 581. In *Haupt*, we held that a claim of negligent misrepresentation was not actionable against the officers of a bank because the alleged misrepresentations were made during arm's-length negotiations between the bank officers and one of the bank's customers. *Haupt*, 514 N.W.2d at 910.

Similarly, in this case there are no facts in the record that support a finding that Neenan was in the business of supplying information. Neenan made representations while negotiating for the sale of his video rental business, a commercial transaction in which the parties were dealing at arm's length. We conclude that Freeman would have no claim for negligent misrepresentation against Neenan.

Because Freeman could not have recovered from Neenan under a theory classified as "fault" under chapter 668, it was error for the court to assign a percentage of fault to Neenan.

### III.  *Cross–Appeal: Damages.*

Defendant cross-appeals claiming that the district court erred in its award of damages to Freeman. Defendant has three complaints which we consider separately.

■ A.  Defendant argues that the $96,000 award for Freeman's monthly payments under the agreement was improper because these payments were made by the corporation owned solely by Freeman rather than by Freeman individually. The district court found that the monthly payments Freeman wrote on the corporation's checks were "merely a matter of bookkeeping convenience." Freeman urges us to reach the same conclusion.

Freeman was personally liable under the purchase agreement. Rather than having the corporation write a check to her so she could write a personal check to make the contract payments, she simply wrote a check on the corporate account directly to Neenan. We agree with the district court's conclusion that the procedure of writing checks on the corporation's account was merely a matter of bookkeeping convenience. In reality, Freeman made the payments of $96,000. Consequently, she may recover these payments as an item of her damages.

■ B.  Defendant also claims that even if these payments can be attributed to Freeman, she should only recover the amount of her payments above what the business was actually worth. The trial court found the business had a value of $60,000. Defendant contends, therefore, that the $96,000 Freeman expended in monthly payments should be reduced by $30,000 because this amount plus her down payment of $30,000 equal the actual value of the business. Freeman responds that she no longer has the business and therefore, defendant should not receive a credit against her losses for something she does not own.

We agree with Freeman. Because of her inability to make the contract payments, contrary to what Brems had represented, she had to transfer the business back to Neenan to avoid any further liability under the contract. Clearly, she did not end up with a business worth $60,000. Therefore, her damages should not be reduced by the actual value of the business.

■ C.  Finally, defendant argues that Freeman's losses are duplicative because the

$96,000 paid by the corporation on Freeman's monthly contract obligation could have been available to pay Freeman a salary. The defendant concludes, therefore, that Freeman is compensated twice when she is awarded the contract payments of $96,000 and lost wages. However, defendant overlooks the fact that Brems told Freeman that the business would pay for itself *and* pay her a salary. Consequently, she had the right to recover her contract payments *and* lost wages. The trial court properly computed Freeman's damages.

IV. *Summary.*

The district court improperly applied the Comparative Fault Act in finding Neenan seventy-five percent at fault. Freeman's only action against Neenan was for fraud and fraud is not "fault" under the comparative fault statute. However, the district court was correct in its calculation of Freeman's damages. Therefore, we reverse the district court's ruling finding Neenan at fault and remand to the district court for entry of judgment against defendant for the entire amount of damages, $180,900.

**REVERSED AND REMANDED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**