APPEL, Justice
(dissenting).
I respectfully dissent.
The majority opinion primarily rests on two legal conclusions. First, the majority opinion holds that, under Iowa Code chapter 668, a plaintiffs intentional misconduct in committing suicide may be compared against the negligence of a defendant in a case in which the defendant has a duty to act reasonably to prevent the plaintiff from self-harm. Second, the majority concludes in the alternative that the defendant, in any event, raised the issue of negligence and presented sufficient evidence of negligence to support the verdict under Iowa Code chapter 668.
In my view, both holdings are incorrect.
I. Applicability of Comparative Fault Act to Intentional Misconduct.
Iowa Code chapter 668 provides legislative codification of comparative fault principles. The chapter followed this court’s decision in Goetzman v. Wichern, 327 N.W.2d 742, 754 (Iowa 1982), superseded by statute, Iowa Code ch. 668, in which the court, as a matter of common law, abandoned contributory negligence in favor of comparative fault principles.
A significant issue in any statutory scheme of comparative fault is whether the intentional acts of parties may be compared against negligent acts of parties. At least six states have concluded that intentional misconduct should be so compared. Specifically, Alaska law provides that fault includes “acts or omissions that are in any measure negligent, reckless, or intentional ”; Idaho law broadly provides for allocation of “negligence or comparative responsibility”; Indiana law states that fault “means an act or omission that is negligent, willful, wanton, reckless, or intentional”; Michigan law reads that fault includes “an act, an omission, conduct, including intentional conduct”; New York law provides for comparison of “culpable conduct”; and North Dakota law allows allocation for “willful conduct.” See Alaska Stat. Ann. § 09.17.900 (2010) (emphasis added); Idaho Code Ann. § 6-803(3) (2010) (emphasis added); Ind.Code Ann. § 34-6-2-45 (2008) (emphasis added); Mich. Comp. Laws Ann. § 600.6304 (2000); N.Y. C.P.L.R. § 1411 (McKinney 1997); N.D. CentCode Ann. § 32-03.2-02 (2010).
Unlike these states, the Iowa legislature made a different choice on the question of intentional acts and omissions. Specifically, Iowa Code section 668.1 defines fault as “one or more acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability....” Iowa Code § 668.1(1). Remarkably, the definition of fault in Iowa law does not include intentional misconduct or any broad phrase that might reasonably be construed to include it. See id.
The majority opinion thus lacks textual support. In defining “fault,” the legislature provided a laundry list of items to be included or considered in the comparative process. See id. The legislature included “negligence,” “recklessness,” and acts or omissions giving rise to “strict liability,” among other things. Id. The legislature did not include “intentional misconduct.” Id.
Ordinarily, when the legislature supplies a list, we do not expand upon the list through creative interpretation. Marcus *128 v. Young, 538 N.W.2d 285, 289 (Iowa 1995); State v. Flack, 251 Iowa 529, 533, 101 N.W.2d 535, 538 (1960). We ordinarily construe a statute based upon the language chosen by the legislature, not based on what it should have said or might have said. Auen v. Alcoholic Beverages Div., 679 N.W.2d 586, 590 (Iowa 2004); Painters & Allied Trades Local Union v. City of Des Moines, 451 N.W.2d 825, 826 (Iowa 1990).
Further, the statute does not use open-textured terms that require judicial development. Negligence, recklessness, strict liability, and all the rest of the words and phrases in the legislature’s definition of “fault” are well defined and do not include within their scope intentional acts. See Farmer’s State Bank of Darwin v. Swisher, 631 N.W.2d 796, 801 (Minn.2001) (holding language similar to Iowa statute does not include intentional acts or omissions); Welch v. Southland Corp., 134 Wash.2d 629, 952 P.2d 162, 164-65 (1998) (stating the phrase “acts or omissions ... that are in any measure negligent or reckless ” is not ambiguous under comparative fault statute).
The majority opinion lacks historical support. It cites nothing in the legislative history of the Iowa Comparative Fault Act to support its position. My independent research has not uncovered any historical materials supporting the majority opinion.
The majority does not offer a convincing structural argument to support its interpretation. Specifically, the Iowa Comparative Fault Act can easily be interpreted, consistent with the statutory language, as not allowing the comparison of intentional misconduct with negligent misconduct. Indeed, it is perfectly sensible to limit the scope of the Iowa Comparative Fault Act to cases involving “fault” as defined by Iowa Code section 668.1 and allow the common law to deal with the cases involving parties who do not have “fault” as defined in that section. Indeed, many courts seem to have come to this conclusion, at least with respect to intentional misconduct of potential defendants. See, e.g., Hennis v. City Tropics Bistro, Inc., 1 So.3d 1152, 1154-57 (Fla.Dist.Ct.App.2009); Brandon ex rel. Estate of Brandon v. Cnty. of Richardson, 261 Neb. 636, 624 N.W.2d 604, 619-20 (2001); Welch, 952 P.2d at 165.
The majority does not have doctrinal support in our case law. Indeed, the case law runs in the opposite direction. We have held, for instance, that intentional misconduct of third parties cannot be compared against negligent defendants. See, e.g., Freeman v. Ernst & Young, 516 N.W.2d 835, 837 (Iowa 1994); see also Tratchel v. Essex Group, Inc., 452 N.W.2d 171, 180-81 (Iowa 1990), abrogated on other grounds by Comes v. Microsoft Corp., 775 N.W.2d 302, 310 (Iowa 2009). It would be odd to suggest that intentional misconduct of defendants cannot be compared, while the intentional misconduct of the plaintiff may.[3] Indeed, the fact that *129 intentional misconduct of third parties could not be compared by a negligent party under Tennessee law was a significant factor that led to the decision in White v. Lawrence, 975 S.W.2d 525 (Tenn.1998).
The majority seizes upon the fact that, in this ease, the plaintiff was receiving outpatient rather than inpatient care. It is suggested that, with the exception of White, the cases involving tort liability in suicide cases against physicians and hospitals arise out of custodial settings. See, e.g., McNamara v. Honeyman, 406 Mass. 43, 546 N.E.2d 139, 146-47 (1989); Cowan v. Doering, 111 N.J.Super. 451, 545 A.2d 159, 160 (N.J.Super.Ct.App.Div.1988). The distinction between custodial and noncustodial care, however, has no relevance to the meaning of “fault” in the language contained in Iowa Code section 668.1. Instead, the distinction between custodial and noncustodial care could be an important factor in determining whether a defendant had a duty or breached a duty of care toward a patient. King v. Smith, 539 So.2d 262, 264 (Ala.1989) (holding psychiatrist had no duty of care in light of the outpatient character of the relationship between the psychiatrist and his patient); Bellah v. Greenson, 81 Cal.App.3d 614, 146 Cal.Rptr. 535, 538 (1978) (observing that the duty imposed on those responsible for the care of a patient in an institutional setting differs from the duty imposed in a case involving an outpatient); Estate of Haar v. Ulwelling, 141 N.M. 252, 154 P.3d 67, 72-73 (N.M.Ct.App.2007) (finding no duty between psychiatrist and patient based on lack of sufficient control of patient); see generally Charles J. Williams, Fault and the Suicide Victim: When Third Parties Assume a Suicide Victim’s Duty of Self-Care, 76 Neb. L.Rev. 301, 310-11 (1997) (discussing custodial/noncustodial distinction as one of duty). These duty issues, however, are not raised in this appeal.[4] Further, whether the patient was receiving outpatient or inpatient care has nothing whatsoever to do with whether Iowa Code section 668.1 includes intentional misconduct within its scope.
In short, the majority appears to be adding a complex sentence to the definition of “fault” in Iowa Code section 668.1. That additional sentence is: “By the way, the term ‘negligence’ includes intentional misconduct of a plaintiff, which may be compared against the negligence of a defendant, but the intentional misconduct of a third-party defendant may not be compared against other culpable parties.”
How is it that the majority adds this additional sentence without substantial support in the statutory text, in the legislative history, in structural imperatives, or in existing doctrine? The result is driven by public policy. Judicial perception of public policy, while often crucial in common law development, does not give this court license to redraft the statute.
*130 Further, there are plausible public policy arguments contrary to those asserted by the majority. It could be argued, for instance, that in cases of suicide, a hospital or physician should not be allowed to compare the plaintiffs intentional act of suicide because that is the very act that the health care professionals have a duty to prevent. See McNamara, 546 N.E.2d at 146 (“We join a number of courts in holding there can be no comparative negligence where the defendant’s duty of care includes preventing the self-abusive or self-destructive acts that caused the plaintiffs injuries.”); Cowan v. Doering, 111 N.J. 451, 545 A.2d at 164-65 (1988) (“[T]he acts which plaintiffs mental illness allegedly caused him to commit were the very acts which defendants had a duty to prevent, and these same acts, cannot as a matter of law, constitute contributory negligence.”); see also Kan. State Bank & Trust Co. v. Specialized Transp. Servs., Inc., 249 Kan. 348, 819 P.2d 587, 606 (1991) (“Negligent tortfeasors should not be allowed to reduce their fault by the intentional fault of another that they had a duty to prevent.”); Veazey v. Elmwood Plantation Assocs., Ltd., 650 So.2d 712, 719 (La. 1994) (same); Lisa A. Mecklenberg, Case Comment, Negligence — Mental Health: Why Is It My Fault When I’m the One Who’s Dead? North Dakota Comparative Fault in a Suicide Victim!Caregiver Context, 71 N.D. L.Rev. 1105, 1122 (1995) (suggesting no fault should be assigned to a person who commits suicide in an action against one who failed to help her); Allen C. Schlinsog, Jr., Comment, The Suicidal Decedent: Culpable Wrongdoer, or Wrongfully Deceased?, 24 J. Marshall L.Rev. 463, 477-89 (1991) (asserting that modern psychiatry repudiates the notion of culpability in suicide cases and that the test of liability for caregivers is whether breach of duty was a substantial factor in bringing about death); Victor E. Schwartz, Civil Liability for Causing Suicide: A Synthesis of Law and Psychiatry, 24 Vand. L.Rev. 217, 255 (1971) (declaring “person who commits suicide is not a blameworthy person and should not be regarded as such”). Similarly, a leading treatise declares that “[tjhere can be no comparative negligence on the part of a patient who commits suicide where the psychiatric staffs duties include preventing the self-destructive act that causes the patient’s death.” Richard M. Patterson, Harney’s Medical Malpractice, § 10.3, at 285 (4th ed.1999).
By citing these cases and authorities, I do not mean to suggest that the best or only approach is to disallow comparison of the intentional acts of a plaintiff who commits suicide. These cases and authorities merely demonstrate that applying the plain language of Iowa Code section 668.1 to preclude the comparison of the plaintiffs intentional acts against the negligence of a health care provider who had a duty to protect the plaintiff from self-harm has a plausible policy footing and is not absurd or irrational.
The approach utilized by the majority is inconsistent with cases in which we decline to allow judicial perceptions of public policy to override the terms or structure of statutes. For instance, in John v. Hyundai Motor Co., 773 N.W.2d 550, 560 (Iowa 2009), we held that comparative fault principles would apply in crashworthiness cases under the language of Iowa Code chapter 668, even though there were policy reasons that could support another result. Similarly, in Andover Volunteer Fire Department v. Grinnell Mutual Reinsurance Co., 787 N.W.2d 75, 87 (Iowa 2010), we concluded that, under the language of the statute, a volunteer firefighter must be called to duty by a third party authorized by the fire chief to be covered by workers’ compensation notwithstanding policy arguments to the contrary. We should not *131 employ inconsistent approaches to statutory interpretation.
II. Negligence.
As a backup to its theory that the phraseology that “fault includes intentional misconduct by a plaintiff but not by a third-party defendant,” the majority suggests in the alternative that, because there was adequate evidence the plaintiff was negligent, negligent acts of the plaintiff may be compared.
The problem with this theory is that, upon my review of the record, it is apparent that the issue of negligence was not joined in this trial. Indeed, remarkably, the only specification of negligence in this trial made against the plaintiff was “the act of suicide.” That is it. In this case, it seems clear that the act of suicide was an intentional act. Sampson v. Ladies of Maccabees of the World, 89 Neb. 641, 131 N.W. 1022, 1024 (1911) (noting that suicide is an intentional act); Falkenstein v. City of Bismarck, 268 N.W.2d 787, 790 (N.D. 1978) (same), abrogated on other grounds by Minto Grain, LLC v. Tibert, 776 N.W.2d 549, 555 (N.D.2009).
Further, on appeal, the defendant in its appellate brief notes that the plaintiff “complied with all instructions.” This admission demonstrates that the defendants did not put in issue the behavior of the decedent prior to the “act of suicide” itself.
The majority trumps these limitations and admissions of the defense — powerful aspects of the record — by suggesting that there was evidence that leaked into the record when a mass of medical records was introduced that might support a negligence theory. That may be barely true, but should be inconsequential in light of the fact that the issue was not joined by the parties. If the plaintiff had been aware that there were specifications of negligence other than “the act of suicide,” a different record may have been developed by the defendant. We cannot decide this case on an issue that was not raised below and about which a much different record may have been developed had the issue been joined. The days of trial by ambush passed long ago, and I would not resurrect them here.
The majority’s reaching out on this issue, like its interpretation of the statute, is driven by policy considerations. But it is also inconsistent with recent case law. In Feld v. Borkowski, 790 N.W.2d 72, 78 & n. 4 (Iowa 2010), the majority of this court adopted a conservative approach to issue preservation in order to prevent consideration of an issue that may have led to abandonment of an antiquated special tort rule that restricted liability. Specifically, in Feld, the majority stated:
[I]n the absence of the most cogent circumstances, we do not create issues or unnecessarily overturn existing law sua sponte when the parties have not advocated for such a change.... [W]e are restrained to apply the controlling law as advocated by the parties....
Feld, 790 N.W.2d at 78 n. 4.
Here, the majority takes a different approach. The parties litigated the case as involving the question of whether “the act of suicide” may give rise to some kind of fault to be compared to the negligence of medical professionals. On appeal, the majority broadens the issue, even though such broadening has not been advocated by the parties. The situation, however, is aggravated because had the parties at trial known that broader issues of negligence were at issue, a different factual record might have been developed.
III. Problem of Intentional Misconduct at Common Law.
It is possible, perhaps, that the claim brought by the plaintiffs in this case, be *132 cause of the intentional acts, could be considered outside the parameters of Iowa Code chapter 668 and, instead, within the purview of common law. The problem with a common law approach to this case, however, is that the parties did not try this as a common law case. The fighting issue at the district court was over the meaning of fault under Iowa Code section 668.1. No one suggested that chapter 668 did not apply to this case.
There may have been some good reasons why the parties accepted the framework of Iowa Code chapter 668. They may have, of course, simply concluded that it applied. Or, there may have been strategic considerations. Iowa Code chapter 668 was not all bad news for the defendants. Iowa Code chapter 668 is a modified comparative fault statute. Under the legislature’s scheme of comparative fault, a plaintiff found more than fifty percent at fault is barred from recovery, whereas at common law there is no such bar. See Goetzman, 327 N.W.2d at 753 (adopting pure comparative negligence). The defendants thus could have made a strategic choice to try the matter under Iowa Code chapter 668 and gain the benefit of modified comparative fault rather than take their chances at common law. Conversely, the plaintiff may have been satisfied with giving up pure comparative fault in light of the fact that intentional acts are not within the definition of “fault” in Iowa Code section 668.1.
Given the posture of the case, I see no alternative other than to answer the question posed by the parties. I would simply hold that under Iowa Code chapter 668, the intentional misconduct of the plaintiff is not compared against the fault of the defendant. There may well be a different answer at common law, but that question is not presented in this appeal and cannot be decided now without reworking the tapestry of the trial in this case.
IV. Conclusion.
I would hold that under Iowa Code chapter 668, the intentional misconduct of the plaintiff cannot be compared against the fault of the defendant. I would therefore reverse the judgment of the district court.
HECHT, J., joins this dissent.

. Under the majority approach, a psychiatrist may be liable to a nurse who is assaulted by his patient without being able to compare the intentional acts of the patient. It lacks symmetry to suggest that when the actor is a plaintiff, the intentional acts may be compared against other parties, but not when the intentional tortfeasor is a defendant. There either is a duty to protect against intentional misconduct or there is not.
This logic is recognized in the case law. For instance, in Tennessee, the supreme court in Turner v. Jordan, 957 S.W.2d 815, 823 (Tenn.1997), held that the intentional acts of a psychiatrist's patient could not be compared to the negligence of a psychiatrist in a medical malpractice action arising from an assault by the patient on the plaintiff. This case was a driving force in White v. Lawrence, 975 S.W.2d 525, 531 (Tenn.1998), which held that *129 the decedent’s intentional act of a suicide could not be compared against the negligence of the decedent’s treating physician in a medical malpractice action.
Similarly, in Iowa, we concluded in Freeman that the intentional act of a third party could not be compared against the negligence of the defendant. See Freeman, 516 N.W.2d at 837. As in Tennessee, the Freeman case provides a strong impetus in this case.

. The majority also seems to imply that the suicide amounts to an intervening or superseding cause that would defeat liability of health care providers. See Jain v. State, 617 N.W.2d 293, 300 (Iowa 2000). But the intervening-cause rationale makes no sense in cases where there is a special relationship to prevent the very harm that was incurred. See id.; see also Edwards v. Tardif, 240 Conn. 610, 692 A.2d 1266, 1269-70 (1997). Moreover, as with duty issues, the intervening/superseding cause issue has nothing to do with the statutory interpretation question before the court.