Filed 11/21/14  Gregory v. County of Los Angeles CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DENEICE GREGORY,<br><br>　　　　Plaintiff and Appellant,<br><br>　　　　v.<br><br>COUNTY OF LOS ANGELES,<br><br>　　　　Defendant and Respondent. | B251945<br><br>(Los Angeles County<br>Super. Ct. No. BC495882) |

　　　　APPEAL from an order of the Superior Court of Los Angeles Country, Barbara A. Meiers, Judge.  Affirmed.

　　　　Patricia J. Barry, for Plaintiff and Appellant.

　　　　John F. Krattli, County Counsel, Sharon A. Reichman, Assistant County Counsel, and Diane C. Reagan, Principal Deputy County Counsel, for Defendant and Respondent.

_____

Appellant Deneice Gregory appeals from an order sustaining respondent County of Los Angeles' demurrer without leave to amend her first amended complaint,[1] which alleged claims for defamation and violations of the Bane Act (Civ. Code, § 52.1)[2] and Unruh Civil Rights Act (§ 51).

We conclude the trial court properly sustained the demurrer and affirm the order.

## FACTUAL AND PROCEDURAL SUMMARY

Appellant's first amended complaint, the operative pleading, alleges the facts of this case as follows: In July 2011, appellant visited the Carson animal shelter, a public facility, as a volunteer to care for its rabbits. While grooming one of the rabbits, appellant noticed it was very ill. She observed maggots and open sores on the rabbit, and saw that its abdomen was red. According to appellant, the rabbit had not been given veterinary care since it was checked into the shelter. Appellant wrapped the rabbit in a towel and splashed it with water in an attempt to remove the maggots. She then spoke with the veterinarian on duty, who stated that "someone dropped the ball." The rabbit eventually died in appellant's arms. The veterinarian then notified Sergeant Moser, an animal control officer, who accused appellant of "home doctoring" and causing the rabbit's death. He prohibited appellant from taking any pictures of the dead rabbit. Moser then instructed appellant not to handle the rabbits until she became an official volunteer, though appellant claimed she had been a volunteer since March 2011.

Appellant continued to visit the Carson animal shelter during the next month and care for its rabbits, without incident. During this time, a cat volunteer informed appellant that she had heard about the "dead bunny" from other volunteers. In August 2011,

---

[1] The record does not contain a written order of dismissal. However, the order sustaining the demurrer indicates dismissal of the case was "ordered at the hearing," and the notice of appeal indicates the appeal is taken from a judgment of dismissal after an order sustaining a demurrer. Neither party has raised an issue concerning appealability and the matter is fully briefed. In the interests of justice and judicial economy, we construe the trial court's order sustaining defendant's demurrer to incorporate a judgment (order) of dismissal. (*Bellah v. Greenson* (1978) 81 Cal.App.3d 614, 618, fn. 1.)

[2] Subsequent statutory references are to the Civil Code, unless otherwise indicated.

appellant again visited the Carson animal shelter but was informed by a clerk that she was barred from the shelter because she was responsible for a rabbit's death. The clerk identified Sergeant Moser as the official who ordered that appellant be barred from the shelter.

In October 2011, appellant returned to the Carson animal shelter. While she was caring for the rabbits, Sergeant Real, a shelter employee, asked appellant to step outside so he could speak with her. He informed her that she was barred from the premises and escorted her off of the property. He did not answer appellant's question regarding who issued the order and why she was not permitted to enter the shelter. Appellant then drove to the Downey animal shelter and entered the rabbit housing area. Sergeant Torres, an employee of the shelter, approached appellant and informed her that she was not on his volunteer roster and prohibited her from taking care of the rabbits. He also stated that Sergeant Moser did not want her at the Carson animal shelter because of something that happened with a rabbit.

Appellant's first amended complaint sought attorney's fees and damages based on defamation, violation of the Bane Act, and violation of the Unruh Civil Rights Act. Respondent filed a demurrer,[3] which the court sustained, and the case was ordered dismissed. This timely appeal followed.

## DISCUSSION

### I

A trial court's order of dismissal following the sustaining of a demurrer is reviewed de novo. (*Tracfone Wireless, Inc. v. County of Los Angeles* (2008)

---

[3] Appellant argues respondent's reply to appellant's opposition to the demurrer did not comply with the California Rules of Court. Specifically, she claims the reply exceeded the page limit because it contained two attachments totaling 14 pages, the first summarizing the arguments supporting demurrer and the second providing a summary of cases cited by both parties. Nothing in the record indicates this issue was preserved for appeal. (*See K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.* (2009) 171 Cal.App.4th 939, 948-949 [to preserve issue for appeal, party must raise objection in trial court and cite to record "'showing exactly where the objection was made'"].) We regard the issue as forfeited.

163 Cal.App.4th 1359, 1363.)  The allegations contained in the pleading must be liberally construed, "with a view to substantial justice between the parties."  (Code Civ. Proc., § 452.)  In examining the sufficiency of a complaint, we treat the demurrer as "admitting all material facts properly pled and matters subject to judicial notice, but not deductions, contentions, or conclusions of law or fact."  (*Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 519.)  "Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  When the trial court has sustained a demurrer, we must determine whether the complaint sets forth facts sufficient to constitute a cause of action.  (*Ibid.*)  If a demurrer is sustained without leave to amend, we determine whether there is a "reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff."  (*Ibid.*)

## II

Appellant's complaint alleges that respondent defamed appellant by accusing her of causing the death of the rabbit and informing others working or volunteering in shelters that appellant had killed a rabbit.  Defamation has two forms—libel and slander. (§ 44)  We find that appellant has failed to plead sufficient facts to support a cause of action for either, and there is no reasonable possibility that the defect can be cured by amendment.

### A.    *Libel*

Libel is defined as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."  (§ 45.)  Generally, "words constituting an alleged libel must be specifically identified, if not pleaded verbatim." (*Kahn v. Bower* (1991) 232 Cal.App.3d 1599, 1612, fn. 5.)

4

Here the complaint alleges, "[o]n information and belief, Sgt. Moser or others at his direction libeled Gregory by putting in writing that she was the cause of the death of the rabbit." ~(CT 10)~ It does not identify the allegedly libelous statement nor specify that the statement was transmitted, and if transmitted, how and to whom. Appellant refers to the claim as a "possible libel" in her complaint, evidencing a lack of facts to constitute a cause of action for libel. It is clear from her briefing that the defect cannot be cured by amendment, as appellant does not suggest any additional facts to show a libelous writing exists. The trial court did not abuse its discretion in sustaining the demurrer against the libel claim.

B.    *Slander*

Slander is "a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means which:  [¶]  (1) Charges any person with crime, or with having been indicted, convicted, or punished for crime . . . [¶] . . . [¶]  (3) Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits . . .  [¶] . . . [¶] . . . ; or (5) Which, by natural consequence, causes actual damage." (§ 46.)  Compared to the definition of libel, "the limited nature of the tort of slander [is] apparent.  Only certain types of oral statements are presumed injurious; to recover for any other utterances, actual damage must be pleaded and proved.  [Citation.]" (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 551, p. 807.)

In her briefing, appellant contends she was accused of the crime of animal cruelty, which would constitute slander per se under section 46, subdivision (1).  But the complaint does not allege that appellant was ever accused of animal cruelty, only that she was stated to have caused the death of a rabbit, which is not necessarily a crime.

Appellant also claims the statements injured her business under section 46, subdivision (3).  But she does not cite to any authority holding that occasional volunteer

work constitutes a "business" within the meaning of section 46, subdivision (3). No authority has been cited, nor have we found any that supports this argument.

Finally, appellant contends she suffered actual damages because she suffered "loss of reputation in the volunteer community and in the County shelters," "humiliation, mental anguish, and emotional and physical distress," and injury to her "mind, body, and spirit." These, however, are not actual damages under the meaning of section 46. (See 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 551, pp. 806-807 [listing discharge from employment, loss of employment opportunity, and loss of business customers or clients as examples of actual damages].)

There is no reasonable possibility that this defect could be cured by amendment, as nothing in the record suggests appellant suffered actual damages; the trial court did not abuse its discretion in sustaining the demurrer against appellant's slander claim.

III

Appellant's second cause of action claims a violation of the Bane Act. (§ 52.1).[4]

---

[4] The Bane Act states in part: "(a) If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured. An action brought by the Attorney General, any district attorney, or any city attorney may also seek a civil penalty of twenty-five thousand dollars ($25,000). If this civil penalty is requested, it shall be assessed individually against each person who is determined to have violated this section and the penalty shall be awarded to each individual whose rights under this section are determined to have been violated. [¶] (b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured." (§ 52.1.)

We do not find sufficient facts to support a showing that a Bane Act violation occurred.

As applied to this case, a Bane Act violation requires allegations that the shelter employees interfered with appellant's rights by means of "threats, intimidation, or coercion" or attempts to do so. (§ 52.1, subd. (a).) The complaint, however, focuses mainly on the *defamation* of plaintiff as "retaliation" for her attempts to exercise her constitutional rights. Defamation alone cannot sustain a Bane Act violation. Subdivision (j) of the act states: "Speech alone is not sufficient to support an action brought pursuant to subdivision (a) or (b), *except upon a showing that the speech itself threatens violence against a specific person* . . . ; and the person . . . against whom the threat is directed *reasonably fears* that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat." (§ 52.1, subd. (j), italics added.) The complaint does not plead any facts showing respondent or its employees published defamatory material threatening violence against appellant.

Appellant also alleges that shelter employees coerced and intimidated her by means other than speech, "namely, barring her from the shelters." She points to one incident involving Sergeant Real, who asked her to step outside where he informed her she was barred from the property. She contends this was an act of intimidation because the request was made in front of third parties and made appellant look as though she "was in trouble." She states in her briefing that she would have been arrested for trespassing had she not left. But the complaint does not allege that Sergeant Real threatened her with arrest if she did not leave the premises. It merely states he "came in and asked [appellant] to step outside and informed her that she was not allowed on the property. He would not give her a reason or who issued this order. He further stated that he did not know what was going on." We do not need to decide whether a Bane Act violation exists on hypothetical facts. Based on the facts alleged, we do not find any "threats,

intimidation, or coercion" in Sergeant Real's actions.[5]  As appellant presented no facts or argument to indicate the defects in the complaint could be cured by amendment, we conclude the demurrer to the Bane Act cause of action was properly sustained without leave to amend.[6]

IV

Appellant also asserts a cause of action for violation of the Unruh Civil Rights Act.  (§ 51.)  This statute provides that, "All persons within the jurisdiction of this state are free and equal, and . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (§ 51, subd. (b).)  The trial court sustained respondent's demurrer on the ground that the County of Los Angeles is not a "business establishment" within the meaning of section 51.  The same is true of county animal shelters.

Appellant points to federal district court decisions holding that public schools are business establishments under the act.  (See, e.g., *Nicole M. v. Martinez Unified Sch. Dist.* (N.D. Cal. 1997) 964 F.Supp. 1369, 1388.)  By analogy, she asks us to hold that county animal shelters also are business establishments because "[s]helters are far closer to a business model than are schools and school districts, public or private."  ~(AOB 50)~ However, appellant does not cite to any state authority in support, and we are not bound by federal district court decisions, especially on issues of state law.  (See *Qualified Patients Assn. v. City of Anaheim* (2010) 187 Cal.App.4th 734, 764.)

---

[5]  In support of her position, appellant relies on *Cole v. Doe* (N.D. Cal. 2005) 387 F.Supp.2d 1084, which holds that, if an officer lacks probable cause to effectuate a stop, using his authority to detain a motorist with handcuffs and searching the motorist's vehicle constitutes an interference by threat, intimidation, or coercion.  *Cole* does not aid appellant, as she was not detained with handcuffs and subject to an illegal search as the plaintiff in *Cole* was; in fact, Sergeant Real never threatened appellant with arrest.

[6]  Because there is no claim that respondent and its employees were using threats, intimidation, or coercion against appellant, we do not address whether appellant was engaging in the exercise of her First Amendment rights by trying to take pictures of the rabbit or whether she was entitled to a hearing under the Fourteenth Amendment for being denied entry to the shelters.

The legislative history of the Unruh Civil Rights Act suggests the opposite result: local entities mainly engaged in providing public services are not within the purview of the act. The legislative history of the act, as described by Justice Mosk in his dissent in *Isbister v. Boys' Club of Santa Cruz, Inc.* (1985) 40 Cal.3d 72 is instructive. "The original version of the measure that ultimately came to be known as the Unruh Act was expansive. It extended to 'all public or private groups, organizations, associations, business establishments, schools and public facilities . . . .' [Citation.] By means of amendment, however, all groups other than 'business establishments' were eliminated." (*Id.* at p. 94 (dis. opn. of Mosk, J.).) The Legislature also included expansive language ("'of every kind whatsoever'"), but only to modify the category of businesses. (*Id.* at p. 79 (maj. opn. of Grodin, J.).) If it wished to include local entities, it would have done so. As desirable as it might be to include public facilities within the purview of the Unruh Civil Rights Act, the power to do so lies with the Legislature, not the courts.

California courts interpreting this provision have focused on whether the organization at issue has sufficient businesslike attributes to qualify as a business establishment when it "appears to have been operating in a capacity that is the functional equivalent of a commercial enterprise." (*Warfield v. Peninsula Golf & Country Club* (1995) 10 Cal.4th 594, 622.) County animal shelters are not functionally equivalent to a commercial enterprise; they are local, governmental entities that serve a social purpose and are largely funded by the county. Their function is more analogous to a "public servant" rather than a commercial enterprise. (*See Carter v. City of Los Angeles* (2014) 224 Cal.App.4th 808, 825 ["We think a public entity providing sidewalks and curbs to its citizens does so as a public servant, not a commercial enterprise"].)

We hold that county animal shelters are not business establishments under the Unruh Civil Rights Act. Since there is no reasonable possibility that the defect can be

9

cured by amendment, the trial court did not abuse its discretion in sustaining the demurrer without leave to amend.[7]

## DISPOSITION

The order is affirmed.  Respondent is entitled to its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**

EPSTEIN, P. J.

We concur:

WILLHITE, J.

COLLINS, J.

---

[7] In light of our foregoing discussion, we do not reach the affirmative defense of statutory immunity raised by respondent.

10