[No. C000521. Third Dist. Mar. 4, 1987.]

NANCY J. SULLIVAN, Plaintiff and Appellant, v.
CITY OF SACRAMENTO et al., Defendants and Respondents.

COUNSEL

Geoffrey P. Wong for Plaintiff and Appellant.

Bolling, Walter & Gawthrop, Katherine M. Power and Bruce A. Kilday for Defendants and Respondents.

OPINION

PUGLIA, P. J.— Plaintiff appeals from an order sustaining a demurrer to her second amended complaint for negligent infliction of emotional distress.[1] Plaintiff contends that she has stated a cause of action

---

[1] An order sustaining a demurrer is not appealable. The appeal must be taken from the ensuing judgment of dismissal. (*Lavine* v. *Jessup* (1957) 48 Cal.2d 611, 614 [311 P.2d 8].)

against defendants and that the trial court erred in sustaining the demurrer. Alternatively plaintiff contends the trial court erred in denying leave to amend. We do not agree with either contention and shall affirm the judgment.

FACTS

For purposes of this appeal, we take as true all well pleaded factual allegations of the complaint. (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].)

The material factual allegations of the second amended complaint are: The Sacramento Police Department was alerted to an ongoing, thirty-minute burglary and rape when plaintiff's neighbors telephoned the dispatch unit after hearing repeated screams for help; dispatcher Singh spoke with plaintiff's neighbors for five minutes; thereafter in violation of defendants' training, practices, and procedures Singh called plaintiff; in a three-minute conversation dispatcher Singh berated and badgered plaintiff with rude, insulting, insolent, abusive and demeaning questions and comments while the rapist stood by plaintiff's side armed with a hammer; Singh negligently failed to assist, with reasonable speed, in communication to police officers and coordination of their activities to apprehend the unknown assailant. As a proximate result of defendant Singh's negligence, plaintiff suffered emotional distress separate and distinct from any injuries caused by the assailant.

Plaintiff filed the original complaint for damages in May 1984. A first amended complaint followed in October 1984, setting forth two causes of action. Defendants demurred to the first amended complaint; the court sustained the demurrer as to plaintiff's first cause of action with leave to amend and as to the second cause of action without leave to amend.[2]

Plaintiff filed a second amended complaint to which defendants' demurrer was sustained without leave to amend on the ground that plaintiff failed to

---

In the interest of justice and to prevent further delay, we will deem that the order sustaining defendants' demurrer incorporates a judgment of dismissal and interpret plaintiffs' notice of appeal as from such dismissal. Accordingly, the order sustaining the demurrer without leave to amend is modified by adding an order dismissing the action. (*California State Employees' Assn.* v. *State of California* (1973) 32 Cal.App.3d 103, 106, fn. 1 [108 Cal.Rptr. 60].)

[2]Plaintiff's second cause of action alleged that she ceased struggling with her attacker after the dispatcher's call, relying on the assumption that police assistance was imminent and therefore incurring additional injuries.

allege facts giving rise to a duty from defendant to plaintiff. This appeal follows.

The primary issue on appeal is whether, considering all well pleaded material allegations in the complaint to be true, the plaintiff has stated facts sufficient to entitle her to some relief. (*Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 919 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518].) Plaintiff's ability ultimately to prove these allegations is of no concern to the reviewing court. (*Ibid.*)

In order to state a cause of action for negligence, the complaint must allege a legal duty on the part of defendant to use due care, and the breach of that duty as the proximate or legal cause of resulting injury. (*Bellah* v. *Greenson* (1978) 81 Cal.App.3d 614, 619 [146 Cal.Rptr. 535, 17 A.L.R.4th 1118].) Whether such a duty exists is primarily a question of law. (*Ibid.*)

In negligence law, "duty" is simply "an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." (Prosser & Keeton on Torts (5th ed. 1984) § 53, p. 358; see *J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799, 803 [157 Cal.Rptr. 407, 598 P.2d 60].) As a general rule, in determining the existence of a duty of care in a given case, pertinent factors to consider include the " 'foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' " (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 203 [185 Cal.Rptr. 252, 649 P.2d 894], citing *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443, P.2d 561, 32 A.L.R.3d 496].) " 'When public agencies are involved, additional elements include "the extent of [the agency's] powers, the role imposed upon it by law and the limitations imposed upon it by budget; . . ." ' " (*Ibid.*, citing *Raymond* v. *Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1, 8 [31 Cal.Rptr. 847].)

In the narrower context of plaintiff's asserted cause of action, the question that arises is "what duty of care is owed by a police officer to individual members of the general public?" The Supreme Court has recognized that "Application of these general principles in the area of law enforcement and other police activities has produced some confusion and conflict." (*Williams* v. *State of California* (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr. 233, 664 P.2d

137].) "To an extent, the concepts are muddied by widely held misconceptions concerning the duty owed by police to individual members of the general public." (Fn. omitted; pp. 23-24.) As has been stated, " 'A person does not, by becoming a police officer, insulate himself from any of the basic duties which everyone owes to other people, but neither does he assume any greater obligation to others individually. The only additional duty undertaken by accepting employment as a police officer is the duty owed to the public at large.' " (Italics omitted, *id.,* at p. 24, fn. 3, citing *Warren* v. *District of Columbia* (D.C.App. 1981) 444 A.2d 1, 8.)

The cause of action for negligent infliction of emotional distress is derived from a line of cases commencing with *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316], in which the Supreme Court has recognized a category of plaintiffs who can recover for emotional harm without physical impact. The most recent of these cases is *Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916. In *Molien* defendant physicians negligently misdiagnosed their patient as syphilitic and instructed her to inform her husband and have him tested for the disease. The husband's complaint for his resulting emotional distress was held by the Supreme Court to state a cause of action. (At p. 923.) This result was explained on the ground that the intangible injury to the plaintiff-husband was "reasonably foreseeable," "easily predictable," and "rational to anticipate." (*Molien, supra,* at p. 923.) The court reasoned that he should be characterized as a "direct victim" of the defendants' negligence. Thus the court concluded, the defendants owed the "plaintiff a duty to exercise due care in diagnosing the physical condition of his wife." (*Ibid.*)

■ Notwithstanding the expansive language in *Molien,* foreseeability alone is not sufficient to impose a duty upon police officers to warn or protect individual members of the public. (*Davidson* v. *City of Westminster, supra,* 32 Cal.3d at p. 209.) Even in circumstances in which the plaintiff's injury could be characterized as both "reasonably foreseeable" and "rational to anticipate" the courts have declined to find that the officer owed a duty to the plaintiff.

Particularly relevant is *Davidson* v. *City of Westminster, supra,* 32 Cal.3d 197. In that case the plaintiff was stabbed four times while in a public laundromat; the laundromat had been the scene of similar assaults on previous occasions. On the evening of the assault police officers had the laundromat under surveillance for the purpose of preventing assaults and apprehending the perpetrator. The officers were aware of plaintiff's presence in the laundromat throughout the surveillance. After about an hour of surveillance, they saw a man on the premises who closely resembled the attacker of the previous

evening and, while watching him for 15 minutes, identified him as the likely perpetrator of that assault. As the officers watched, the suspect entered and left the laundromat "several times." The officers did not warn plaintiff. Eventually the suspect stabbed her. (*Davidson* v. *City of Westminster, supra,* at p. 201.) The Supreme Court concluded that in the absence of a special relationship between the officers and the plaintiff, the officers owed no duty of care to the plaintiff.

A similar conclusion was reached in *Stout* v. *City of Porterville* (1983) 148 Cal.App.3d 937 [196 Cal.Rptr. 301], where the inebriated plaintiff was stopped by a police officer while walking down a street at 1:30 in the morning. Despite his obviously intoxicated condition, the officer did not take plaintiff into custody for violating Penal Code section 647, subdivision (ff). Plaintiff was later struck by a vehicle and sued the city to recover for the injuries he sustained. The court found that the officer owed no legal duty to the plaintiff because the officer's conduct in no way increased the risk that plaintiff would be injured. (*Id.,* at p. 945; see also *Jackson* v. *Clements* (1983) 146 Cal.App.3d 983 [194 Cal.Rptr. 553]; *Harris* v. *Smith* (1984) 157 Cal.App.3d 100 [203 Cal.Rptr. 541]; and *Hucko* v. *City of San Diego* (1986) 179 Cal.App.3d 520 [224 Cal.Rptr. 552].)

The rationale of these cases is grounded in the distinction at common law between misfeasance and nonfeasance. ■ Thus, as a rule, one has no duty to come to the aid of another. A person who has not created a peril is not liable in tort merely for failure to take affirmative steps to assist or protect another unless there is some relationship between them which gives rise to a duty so to act. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 554, p. 2821.) Therefore recovery has been denied for injuries caused by the failure of police personnel to investigate or respond to requests for assistance where the police had not induced reliance on a promise, express or implied, that they would provide protection. (*Hartzler* v. *City of San Jose* (1975) 46 Cal.App.3d 6 [120 Cal.Rptr. 5] [police failed to respond to a plea made 45 minutes before the homicide]; *Antique Arts Corp.* v. *City of Torrance* (1974) 39 Cal.App.3d 588 [114 Cal.Rptr. 332] [police radio dispatcher delayed 10 minutes after alert before broadcasting burglary in progress]; *McCarthy* v. *Frost* (1973) 33 Cal.App.3d 872 [109 Cal.Rptr. 470] [complaint alleged decedent was driving on a state highway at a particular time and place, highway patrol negligently failed to find him, and death was caused by failure to receive timely medical aid; held state and patrolman not liable].)

However, once one undertakes to come to the aid of another he is "under a duty to exercise due care ... and is liable if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of

the other's reliance upon the undertaking." (*Williams* v. *State of California, supra,* 34 Cal.3d at p. 23; Rest.2d Torts, § 323.)

██ "[W]hen the state, through its agents, voluntarily assumes a protective duty toward a certain member of the public and undertakes action on behalf of that member, thereby inducing reliance, it is held to the same standard of care as a private person or organization." (*Williams* v. *State of California, supra,* 34 Cal.3d at p. 24.) As stated by Prosser, the inquiry in such cases is whether the "defendant has gone so far in what he has actually done, and has got himself into such a relation with the plaintiff, that he has begun to affect the interests of the plaintiff adversely, as distinguished from merely failing to confer a benefit upon him." (Prosser & Keeton on Torts, *supra,* § 56, p. 375.)

Such an affirmative act has been found in disparate circumstances. In *McCorkle* v. *City of Los Angeles* (1969) 70 Cal.2d 252 [74 Cal.Rptr. 389, 449 P.2d 453], an affirmative act was found when an officer investigating an accident directed the plaintiff to follow him into the middle of the intersection where the plaintiff was hit by another car. Similarly, a special relationship based on an affirmative act was found in *Mann* v. *State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82], where a highway patrolman came to the aid of a stranded motorist and parked his patrol vehicle behind a stalled car on the freeway where its flashing amber light would ward off traffic approaching from the rear. The patrolman then called a tow truck but withdrew without warning before it arrived and could assume the protective position occupied by the patrol vehicle behind the stalled car. As a consequence, the stalled car was sideswiped by a passing car and persons nearby were injured. The officer, having stopped to investigate, took affirmative steps to provide assistance, lulled the injured parties into a false sense of security and perhaps prevented other assistance from being sought. His conduct thus contributed to, increased, and changed the risk which otherwise would have existed. (See discussion of *Mann* in *Williams* v. *State of California, supra,* 34 Cal.3d at p. 25.)

An affirmative act was also found in *DeLong* v. *Erie County* (1982) 89 App.Div.2d 376 [455 N.Y.S. 2d 887]. In that case, the decedent telephoned an emergency number and reached the police complaint desk. She reported to the official there that a burglar was attempting to break into her residence, and requested assistance. The official said, "Okay, right away," then caused police units to be dispatched to the wrong address. When the police units reported back that there was no such address, no follow-up of any kind took place; the call was treated as a fake. Thirteen minutes after her call, decedent was stabbed to death in her home by an intruder. The court, in holding the

County of Erie liable, reasoned that the official's acceptance of the call, transmittal of the complaint to the dispatcher, and the dispatcher's radio calls to the police cars were affirmative actions setting the emergency machinery in motion. The decedent relied upon the official's assurance he would send help. The voluntary assumption of a duty to act by the police carried with it the obligation to act with reasonable care. (*Id.,* at p. 892.)

A second situation in which a duty of care arises is when the public entity is under a mandatory duty imposed by an enactment. A violation of a legislatively prescribed standard of care creates a rebuttable presumption of negligence. (*Vesely* v. *Sager* (1971) 5 Cal.3d 153, 164-165 [95 Cal.Rptr. 623, 486 P.2d 151]; Evid. Code, § 669, subd. (a).) Government Code section 815.6 applies this rule to public entities. (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 2.41, p. 93.) It provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

The Law Revision Commission noted when section 815.6 was enacted that "Public entities should be liable for the damages that result from their failure to exercise reasonable diligence to comply with applicable standards of safety and performance established by statute or regulation. Although decisions relating to the facilities, personnel or equipment to be provided in various public services involve discretion and public policy to a high degree, nonetheless, when minimum standards of safety and performance have been fixed by statute or regulation—as, for example, the duty to supervise pupils under Education Code Section 13557 [now Ed. Code, § 44807] and the rules of the State Board of Education, the duty to provide lifeguard service at public swimming pools under Health and Safety Code section 24101.4 and the regulations of the State Department of Public Health, or the duty to meet applicable requirements established by law in the construction of improvements —there should be no discretion to fail to comply with those minimum standards." (Recommendation Relating to Sovereign Immunity, No. 1, Tort Liability of Public Entities and Public Employees (Jan. 1963), 4 Cal.Law Revision Com. Rep. (1963) pp. 801, 816.)

■ We first consider plaintiff's contention that the police dispatcher was under a duty imposed by an enactment to refrain from telephoning her under the circumstances of the case. Plaintiff alleges merely that the telephone call made to her by Singh was in violation of the Sacramento Police Depart-

ment's 'training, practices, and procedures." There is no allegation of violation of a specifically identified regulation.

. **(9)** "[A] litigant seeking to plead the breach of a mandatory duty must specifically allege the applicable statute or regulation." (*Lehto* v. *City of Oxnard* (1985) 171 Cal.App.3d 285, 292 [217 Cal.Rptr. 450].) **(10)** The Supreme Court has stated: "Whether a particular statute is intended to impose a mandatory duty is a question of interpretation for the courts. [Citations.] The legislative intent can usually be determined from the statutory language. [Citation.] However, when the specific language does not shed light as to the intent of the Legislature, it can be determined from other factors which indicate the intent of the Legislature. [Citation.] It is well established that statutes must be given a reasonable construction that conforms to the apparent purpose and intention of the law makers [citations], and the various parts of the statutory enactment must be harmonized by considering the particular clause in the context of the whole statute. [Citations.]" (*Nunn* v. *State of California* (1984) 35 Cal.3d 616, 624–625 [200 Cal.Rptr. 440, 677 P.2d 846].)

 Unless the applicable enactment is alleged in specific terms, a court cannot determine whether the enactment relied upon was intended to impose an obligatory duty to take official action to prevent foreseeable injuries or whether it was merely advisory in character. Since plaintiff does not allege violation of a specific provision, no duty can be predicated on an alleged violation of the department's "training, practices and procedures."

Plaintiff next contends that the dispatcher's call to her was an affirmative act which both increased the risk of harm to her, and was a promise of aid upon which she relied to her detriment. It is clear that if the dispatcher had done nothing in response to the call from plaintiff's neighbors, recovery would be denied. (*Hartzler* v. *City of San Jose, supra,* 46 Cal.App.3d 6.) However, in this case the dispatcher did an affirmative act: she telephoned plaintiff at her apartment. The dispatcher's affirmative act, plaintiff argues, increased and changed the existing risk to her.

The defendants contend the dispatcher is immune from liability under the provisions of Government Code section 820.2 for the act of calling plaintiff and that this immunity redounds to the benefit of the governmental defendants as her employers under subdivision (b) of Government Code section 815.2. The latter provision shields a public entity from liability "for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

Government Code section 820.2 provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

Whether or not a public employee is immune from liability under section 820.2 depends in many cases upon whether the act in question is "discretionary" or "ministerial." (*McCorkle* v. *City of Los Angeles, supra,* 70 Cal.2d at p. 260.) Classification of the act as "discretionary" will not produce immunity if the injury to another results, not from the employee's exercise of "discretion vested in him" but from his negligence in performing it after having made the discretionary decision to do so. (*McCorkle* v. *City of Los Angeles, supra,* 70 Cal.2d at p. 261.)

Plaintiff asserts, however, that she sustained injury as a direct result of the dispatcher's call itself. We believe the choice whether or not to call was a discretionary decision invoking the " 'personal deliberation, decision and judgment' " (*McCorkle, supra,* 70 Cal.2d at p. 261) of the dispatcher and as such was cloaked with discretionary immunity under Government Code section 820.2.

In any event, the second amended complaint contains no allegations that the dispatcher's call increased the risk to plaintiff, giving rise to a duty from defendants to plaintiff. Nevertheless, on appeal plaintiff contends she can amend her complaint to show that prior to the dispatcher's call the rapist's attack consisted of a series of physical assaults without the use of a weapon; upon receipt of the telephone call, the rapist threatened plaintiff with a hammer. Thus, by reason of the dispatcher's call, the rape escalated into a potential murder. Plaintiff further contends she can amend her complaint to allege the seizure of the weapon by the rapist realistically eliminated the opportunity of flight.

There is a policy of great liberality in permitting amendments to the pleadings at any stage of the proceeding. (*Klopstock* v. *Superior Court* (1941) 17 Cal.2d 13, 19 [108 P.2d 906, 135 A.L.R. 318]; see 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 1121, pp. 537-538.) An application to amend a pleading is addressed to the trial judge's sound discretion. (*Dos Pueblos Ranch & Imp. Co.* v. *Ellis* (1937) 8 Cal.2d 617, 622 [67 P.2d 340].) On appeal the trial court's ruling will be upheld unless a manifest or gross abuse of discretion is shown. (*Ibid.; Bedolla* v. *Logan & Frazer* (1975) 52 Cal.App.3d 118, 135 [125 Cal.Rptr. 59].) The burden is on the plaintiff to demonstrate that the trial court abused its discretion. (*HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508, 513, fn. 3 [125 Cal.Rptr. 365, 542 P.2d 237].)

 Plaintiff opposed defendants' demurrer to her second amended complaint solely on the ground that she had pleaded sufficient facts, specifically to establish that defendant owed her a duty of due care. Plaintiff did not move to amend her pleading, nor did she suggest to the court that there were additional relevant facts with which her pleading could be supplemented. Under these circumstances the trial court did not abuse its discretion in sustaining defendants' demurrer without leave to amend. (See *Martin v. Thompson* (1882) 62 Cal. 618, 622.)

The judgment is affirmed.

Evans, J., and Sims, J., concurred.