[No. B045924. Second Dist., Div. Two. Aug. 3, 1990.]

MANUEL ZEPEDA et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES, Defendant and Respondent.

COUNSEL

Thomas Edward Wall for Plaintiffs and Appellants.

James K. Hahn, City Attorney, John T. Neville and Richard M. Helgeson, Assistant City Attorneys, for Defendant and Respondent.

OPINION

COMPTON, Acting P. J.—Plaintiffs Manuel and Rosa Zepeda appeal from a judgment of dismissal entered after the trial court sustained a demurrer to their complaint. We affirm.

The record reveals that plaintiffs commenced an action against defendants City of Los Angeles (City) and Robert Rosito[1] for the wrongful death of their son Jerman. According to the allegations of the complaint, Rosito shot Jerman in the neck on February 28, 1988. Even though they were in no apparent danger, a paramedic team employed by the City purportedly refused to render medical attention or otherwise assist Jerman until the police arrived at the scene. The complaint further averred that Jerman eventually died because the paramedics breached "a duty to come to the aid of the decedent or at least make inquiry as to the status of the decedent."

The City subsequently filed a demurrer which the trial court sustained with leave to amend. When plaintiffs elected to stand on their complaint, the court again sustained the demurrer and then dismissed the action.

■ Even assuming, as we must, that all of the material facts alleged in plaintiffs' complaint are true (*Loehr* v. *Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1076-1077 [195 Cal.Rptr. 576]), we find they have failed to state a cause of action against the City for wrongful death.

■ The sine qua non of any negligence action is, of course, the existence of a duty of care owed by the alleged wrongdoer to the person injured, or to a class of which he is a member. (*Rodriguez* v. *Bethlehem* (1974) 12 Cal.3d 382, 399 [115 Cal.Rptr. 765, 525 P.2d 669]; *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; *Gregori-*

[1] Rosito is not a party to this appeal.

*an* v. *National Convenience Stores, Inc.* (1985) 174 Cal.App.3d 944, 948 [220 Cal.Rptr. 302].) ■ As used here, the term "duty" is simply "an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." (Prosser & Keeton on Torts (5th ed. 1984) § 53, p. 358; see also *Sullivan* v. *City of Sacramento* (1987) 190 Cal.App.3d 1070, 1075 [235 Cal.Rptr. 844].) ■ Whether or not a duty exists is primarily a question of law. (*Sullivan* at p. 1075; *Bellah* v. *Greenson* (1978) 81 Cal.App.3d 614, 619 [146 Cal.Rptr. 535, 17 A.L.R.4th 1118].)

■ As a general rule, one has no duty to come to the aid of another. A person who has not created a peril is not liable in tort merely for failure to take affirmative steps to assist or protect another unless there is some special relationship between them which gives rise to a duty to act. (*Williams* v. *State of California* (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr. 233, 664 P.2d 137]; *Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 203 [185 Cal.Rptr. 252, 649 P.2d 894]; see also Rest.2d Torts, § 323.) Other than cases involving landowners and their invitees, those cases finding the existence of a special relationship most frequently involve some act or omission on the part of the defendant that either created a risk or increased an existing risk to a known person. (See *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]; *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352]; *Mann* v. *State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82].)

■ The rules concerning a private citizen's duty—or lack thereof—to come to the aid of another also are applicable to law enforcement and emergency rescue personnel. (See *Williams* v. *State of California, supra*, 34 Cal.3d at p. 24.) Our Supreme Court has made it clear that " '[a] person does not, by becoming a police officer, insulate himself from any of the basic duties which everyone owes to other people, but neither does he assume any greater obligation to others individually. The only additional duty undertaken by accepting employment as a police officer is the duty owed to the public at large.' " (*Id.* at p. 24, fn. 3, italics omitted.) Therefore, recovery has been denied for injuries caused by the failure to investigate or respond to requests for assistance where the police had not induced reliance on a promise, express or implied, that they would provide protection. (See, e.g., *Sullivan* v. *City of Sacramento, supra*, 190 Cal.App.3d 1070 [police radio dispatcher berated rape victim and failed to provide assistance]; *Rose* v. *County of Plumas* (1984) 152 Cal.App.3d 999 [199 Cal.Rptr. 842] [police officers failed to provide emergency care]; *Hartzler* v. *City of San Jose* (1975) 46 Cal.App.3d 6 [120 Cal.Rptr. 5] [police failed to respond to a plea

for help made 45 minutes before the homicide]; *Antique Arts Corp.* v. *City of Torrance* (1974) 39 Cal.App.3d 588 [114 Cal.Rptr. 332] [police radio dispatcher delayed 10 minutes after alert before broadcasting burglary in progress]; *McCarthy* v. *Frost* (1973) 33 Cal.App.3d 872 [109 Cal.Rptr. 470] [complaint alleged decedent was driving on a state highway at a particular time and place, highway patrol negligently failed to find him, and death was caused by failure to receive timely medical aid; held state and patrolman not liable].)

■ Applying these principles to the instant case, we think it clear that the City's paramedics had no general duty to render aid to plaintiffs' decedent. Based upon the allegations of the complaint, the emergency personnel involved did not create the peril to decedent, they did not voluntarily assume a special duty to assist him, they made no promise or statement to induce reliance, nor did they increase the risk to him that otherwise would have existed. Said another way, the paramedics could not negligently perform an act they had not undertaken to perform, and to that extent plaintiffs' pleading is defective on its face.

Plaintiffs argue, however, that a special relationship existed because Health and Safety Code section 1799.107 imposes a mandatory duty upon emergency rescue personnel to render assistance whenever summoned. Plaintiffs' emphasis on the "mandatory" nature of the duty is an obvious attempt to plead around the provisions of Government Code section 820.2[2] and into Government Code section 815.6.[3] ■ The latter statute applies to public entities the familiar rule of tort law that violation of a legislatively prescribed standard of care creates a rebuttable presumption of negligence. (*Lehto* v. *City of Oxnard* (1985) 171 Cal.App.3d 285, 292 [217 Cal.Rptr. 450].)

■ Health and Safety Code section 1799.107, subdivision (b), provides in relevant part: "[N]either a public entity nor emergency rescue personnel shall be liable for any injury caused by an action taken by the emergency rescue personnel acting within the scope of their employment to provide emergency services, unless the action taken was performed in bad faith or in

---

[2] Government Code section 820.2 provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

[3] Government Code section 815.6 states: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

a grossly negligent manner." The clear import of this language is to limit, not expand, a public entity's liability exposure for providing emergency services to the public. In enacting the statute, the Legislature declared: "The Legislature finds and declares that a threat to the public health and safety exists whenever there is a need for emergency services and that public entities and emergency rescue personnel *should be encouraged to provide emergency services.* To that end, a qualified immunity from liability shall be provided for public entities and emergency rescue personnel providing emergency services." (Health & Saf. Code, § 1799.107, subd. (a); italics added.) Viewed in light of this expression of legislative intent, we think it obvious that the statute does not impose a general duty upon emergency personnel to provide assistance whenever and wherever summoned. Subdivision (b) merely defines the level of negligence that will result in the imposition of liability once assistance is rendered. (See also Health & Saf. Code, § 1799.106, providing that "a firefighter, police officer or other law enforcement officer . . . *who renders emergency medical services* at the scene of an emergency shall only be liable in civil damages for acts or omissions performed in a grossly negligent manner or acts or omissions not performed in good faith." (Italics added.)) Had the Legislature desired to impose upon emergency personnel the mandatory duty to render aid, it could easily have said so. It did not, and we will not impose such a requirement here.

Nothing in *Wright* v. *City of Los Angeles* (1990) 219 Cal.App.3d 318 [268 Cal.Rptr. 309] compels a contrary conclusion. In that case, the victim, who had been involved in an altercation with another suspect and was later arrested and handcuffed by the police, died from sickle cell shock after city paramedics summoned to the scene conducted only a cursory examination. In determining whether the defendants were liable, the Court of Appeal found that Health and Safety Code section 1799.106 established a duty for emergency personnel to provide "medical services in a manner which was not grossly negligent or performed in bad faith." (219 Cal.App.3d at p. 345.) The court then applied that standard in finding that the paramedics were grossly negligent in their treatment of the victim.

Contrary to the argument advanced by plaintiffs, *Wright* does not hold that emergency personnel must respond to all calls for assistance from the general public or risk liability in tort. Indeed, such a holding would have had no application to the underlying facts. Unlike the instant case, the paramedics in *Wright* actually examined the victim and thus were held to the standard of care set forth in Health and Safety Code section 1799.106. Here, of course, the City's paramedics provided no form of assistance and were not obligated to do so either by statute or common law rule.

Based upon the foregoing, we can only conclude that, as a matter of law, plaintiffs' action is without merit and that the trial court properly sustained the City's demurrer.

The judgment is affirmed.

Gates, J., and Fukuto, J., concurred.

A petition for a rehearing was denied August 30, 1990.