Filed 8/9/21  Brown v. Arizona Diamondbacks CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ESSEX WAYNE BROWN, | C091629 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201600202613) |
| v. | |
| ARIZONA DIAMONDBACKS et al., | |
| Defendants and Respondents. | |

Plaintiff Essex Wayne Brown worked for the Sacramento River Cats Baseball Club, LLC (River Cats) as the manager of the visiting team's clubhouse.[1]  The River Cats terminated Brown's employment after two seasons.  Brown sued the River Cats, alleging various employment-related causes of action.  Brown also sued defendant Joseph Metz, an athletic trainer for the Reno Aces, another team in the same league, and Metz's

---

[1] The River Cats are not a party to the present appeal.

1

employer, the Arizona Diamondbacks (Diamondbacks).[2]  The present appeal concerns Brown's causes of action against Metz and the Diamondbacks.  These causes of action include:  (1) a cause of action against Metz and the Diamondbacks for racial harassment in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940, subd. (j));[3] (2) a cause of action against Metz and the Diamondbacks for aiding and abetting violations of FEHA by the River Cats (§ 12940, subd. (i)); (3) a cause of action against Metz for violations of the Ralph Act (Civ. Code, § 51.7); and (4) a cause of action against the Diamondbacks under Business and Professions Code section 17200, et seq. (the UCL).

Brown's appeal focuses on two pretrial orders.  First, Brown purports to challenge an order sustaining the demurrer of Metz and the Diamondbacks with leave to amend to his cause of action for racial harassment.  Metz and the Diamondbacks argue, and we agree, that no appeal lies from the demurrer order, and therefore, the racial harassment cause of action is not properly before us.  Second, Brown challenges the trial court's order granting summary judgment in favor of Metz and the Diamondbacks on his causes of action for aiding and abetting violations of FEHA, violations of the Ralph Act, and violations of the UCL.  Brown argues that triable issues of material fact preclude summary judgment as to Metz and the Diamondbacks.  We agree with Brown that triable issues of material fact remain concerning the Ralph Act cause of action against Metz. Accordingly, we will reverse the judgment as to Metz and direct the trial court to vacate the order granting summary judgment as to Metz and enter a new order granting summary adjudication of Brown's cause of action for aiding and abetting violations of FEHA as to Metz.  The judgment as to the Diamondbacks is affirmed.

---

[2] The Reno Aces is the dba designation of SK Baseball, LLC.

[3] Undesignated statutory references are to the Government Code.

# I. BACKGROUND

Brown, an African American, was hired as the visiting team clubhouse manager for the River Cats in 2014. The River Cats are a minor league baseball team and a member of the Pacific Coast League.[4] The Reno Aces are another member of the Pacific Coast League. The Reno Aces are affiliated with the Diamondbacks, a major league team. Metz was an athletic trainer for the Reno Aces, employed by the Diamondbacks. As the visiting team clubhouse manager, Brown was responsible for maintaining and operating the clubhouse, and hosting visiting teams from the Pacific Coast League. The Reno Aces were one such team.

The Reno Aces came to Sacramento twice during the 2014 baseball season, using the visiting clubhouse for three days in July 2014 and five days in August-September 2014. According to Brown, Metz was a problem from the start. He was rude, disrespectful, and refused to work with Brown to plan the team's visit. He complained about the clubhouse, and let it be known he thought Brown was doing a bad job as manager. He made derogatory comments within earshot of Brown and others, saying things like, " 'What are the River Cats doing down here?' " and " 'The River Cats are running a circus down here.' " According to Brown, Metz also subjected him to vitriol, asking rhetorically, " 'Who the f[uck] do you think you are?' " and responding, " 'You are nothing.' "

Things went from bad to worse towards the end of the Reno Aces' second visit of the 2014 season. As the team was preparing to leave, Metz turned to Brown and said, in substance, " 'This is your last year here. Hope you enjoyed it. I talked to the front office, you are out of here. You will not be here next season. I made sure that will not happen.' " According to Brown, Metz also said, " 'You're nothing but a low life clubby

_____

[4] The Pacific Coast League operates in the Western, Midwestern, and Southwestern United States.

nigger.' "[5]  A couple of days later, Brown wrote a letter describing his difficulties with Metz.  Brown gave copies of the letter to both the River Cats and the Diamondbacks.

Brown was hired as the visiting clubhouse manager for the 2015 baseball season, despite his problems with Metz.  The Reno Aces returned to Sacramento in June 2015, using the visiting clubhouse for four days.  With the return of the Reno Aces came the return of Metz, and with him, new problems for Brown.  On June 20, 2015, Phil Nevin, the manager of the Reno Aces, yelled and cursed at Brown for giving him a wrinkled shirt, saying that Brown was everything Metz said he was the year before.  Later that day, Metz upbraided Brown for failing to fill a therapeutic ice tub, saying that Brown should do his "fucking job" and "get this ice."  According to Brown, Metz then threw an ice bucket across the room, striking him in the leg.  Metz and the Diamondbacks, for their part, maintain that Metz slid the bucket on the ground in Brown's direction.

During the 2015 season, a trainer for the Round Rock Express, another team in the Pacific Coast League, created a survey rating clubhouses and clubhouse managers in the league.  The survey was circulated to all trainers in the Pacific Coast League.  Jeffrey Savage, the president of the River Cats, was told that the survey was created in response to conditions at the River Cats' visiting clubhouse.  Savage concluded that the survey reflected poorly on the visiting clubhouse and called into question Brown's ability to continue as clubhouse manager.  Brown was terminated on July 14, 2015, before the end of the season.

Brown brought suit against the River Cats, the Reno Aces, the Diamondbacks, and Metz.  The second amended complaint, which is the operative pleading, asserts numerous causes of action against the River Cats, including the following violations of FEHA:  (1) race discrimination in violation of section 12940, subdivision (a); (2) racial harassment in

---

[5]  Metz denies using the slur.

4

violation of section 12940, subdivision (j)(1); (3) retaliation in violation of section 12940, subdivision (h); and (4) failure to prevent discrimination and harassment in violation of section 12940, subdivision (k). The second amended complaint also asserts a cause of action against Metz and the Diamondbacks for aiding and abetting violations of FEHA by the River Cats, a cause of action against Metz for violations of the Ralph Act, and a cause of action against the Diamondbacks for violations of the UCL.

Metz and the Diamondbacks demurred to the cause of action for racial harassment on the ground that they are not alleged to have been Brown's employers. The trial court sustained the demurrer with leave to amend. Rather than amend the pleading, Brown voluntarily dismissed the cause of action without prejudice. Metz and the Diamondbacks then moved for summary judgment on the remaining causes of action for aiding and abetting violations of FEHA (against Metz and the Diamondbacks), the cause of action for violating the Ralph Act (against Metz only) and the cause of action for violating the UCL (against the Diamondbacks only). The trial court granted the motion.

Brown then filed a new trial motion, which was denied. This appeal timely followed.

## II.  DISCUSSION

*A.    Order Sustaining Demurrer with Leave to Amend*

We begin with Brown's purported challenge to the trial court's order sustaining the demurrer to the cause of action for racial harassment. Brown argues the trial court erred in sustaining the demurrer because section 12940, subdivision (j) imposes liability on an employer "or any other person" who harasses another person on the basis of race, which, Brown says, would include nonemployers such as Metz and the Diamondbacks. (§ 12940, subd. (j)(1).) Metz and the Diamondbacks respond that we lack jurisdiction to consider Brown's challenge to the demurrer order. We agree with Metz and the Diamondbacks.

5

As noted, the trial court sustained the demurrer to the racial harassment cause of action with leave to amend. As a general rule, an order sustaining a demurrer is not an appealable order. (*Sullivan v. City of Sacramento* (1987) 190 Cal.App.3d 1070, 1073, fn. 1.) The appeal must be taken from the ensuing judgment of dismissal. (*Ibid.*) "When a demurrer is sustained with leave to amend, and the plaintiff chooses not to amend but to stand on the complaint, an appeal from the ensuing dismissal order may challenge the validity of the intermediate ruling sustaining the demurrer. [Citation.] On the other hand, where the plaintiff chooses to amend, any error in the sustaining of the demurrer is ordinarily waived." (*County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 312.)

In the present case, Brown chose neither to stand on the allegations of the second amended complaint nor to amend them. For whatever reason, he chose instead to dismiss the racial harassment cause of action without prejudice. As a result, there has been no final judgment with respect to Brown's racial harassment cause of action. In the absence of a final judgment, there is no appealable order, and Brown's challenge to the demurrer order must be dismissed. (See *Thaler v. Household Finance Corp.* (2000) 80 Cal.App.4th 1093, 1098 [an order sustaining a demurrer is "usually not immediately appealable, because it is not on its face a final judgment"].)

Brown acknowledges the jurisdictional problem, but observes that an appeal may be taken after a voluntary dismissal following an adverse court ruling, if the dismissal is made solely for the purpose of expediting an appeal. (See *Ashland Chemical Co. v. Provence* (1982) 129 Cal.App.3d 790, 793 ["many courts have allowed appeals by plaintiffs who dismissed their complaints after an adverse ruling by the trial court, on the theory that the dismissals were not really voluntary, but only done to expedite an appeal"]; see also *Stewart v. Colonial Western Agency, Inc.* (2001) 87 Cal.App.4th 1006, 1012 ["appellate courts treat a voluntary dismissal with prejudice as an appealable order if it was entered after an adverse ruling by the trial court in order to expedite an appeal of

6

the ruling"].)  This exception does not apply here, because a voluntary dismissal *without prejudice* does not have the legal effect of a final judgment and cannot be said to have served to expedite an appeal.  (*Gutkin v. University of Southern California* (2002) 101 Cal.App.4th 967, 975 ["Because Gutkin dismissed his remaining claims in this case *without prejudice*, the voluntary dismissal could not have the legal effect of a final judgment, and could not serve to expedite an appeal.  By voluntarily dismissing the action *without prejudice,* Gutkin lost his ability to challenge the trial court's interim orders"].)  We therefore conclude that Brown cannot appeal the trial court's demurrer order.  (*Ibid.*)  Having so concluded, we have no occasion to consider the merits of Brown's racial harassment cause of action.

**B.**      ***Order Granting Summary Judgment in Favor of Metz and the Diamondbacks***

We now turn to Brown's challenge to the trial court's summary judgment order.  Brown argues the trial court erred in granting summary judgment on his causes of action for aiding and abetting violations of FEHA (against Metz and the Diamondbacks), violations of the Ralph Act (against Metz), and violations of the UCL (against the Diamondbacks).  We address these contentions momentarily, pausing first to consider the applicable standard of review.

**1.**      *Standard of Review*

Summary judgment is appropriate when all the papers submitted show there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)  "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

A defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an

element of the cause of action or there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra,* 25 Cal.4th at p. 853; *Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1179-1180.) This may be done by affirmatively proving that a specified fact does not exist or by showing that the plaintiff has no evidence to prove that fact. (*Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 756.)

Once the moving defendant has met its initial burden, the burden shifts to the nonmoving plaintiff to show that a triable issue of material fact exists. (*Aguilar, supra,* 25 Cal.4th at p. 850.) A triable issue of material fact exists if, and only if, the evidence reasonably permits the trier of fact to find the contested fact in favor of the plaintiff in accordance with the applicable standard of proof. (*Ibid.*)

We review an order granting summary judgment de novo, applying the same three-step analysis as the trial court. (*Aguilar, supra,* 25 Cal.4th at p. 860; *Hamburg v. Wal-Mart Stores, Inc.* (2004) 116 Cal.App.4th 497, 503.) First, we identify the issues framed by the pleadings, as those are the allegations to which the motion must respond. (*Hamburg, supra,* at p. 503.) We next determine whether the defendant's showing establishes facts which negate the plaintiff's claims and justify a judgment in the defendant's favor. (*Ibid.*) If the defendant has made such a showing, we then determine whether the plaintiff has demonstrated the existence of a triable, material issue of fact. (*Ibid.*)

We view the evidence in a light favorable to the party opposing summary judgment, liberally construing that party's evidence while strictly scrutinizing the moving party's showing and resolving all doubts concerning the evidence in favor of the opposing party. (*Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 499-500.) We consider all of the evidence offered in connection with the motion except that which the trial court properly excluded. (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 717; *Gin v. Pennsylvania Life Ins. Co.* (2005) 134 Cal.App.4th 939, 946.) The trial court's stated reasons for granting summary judgment are not binding on us, because we

8

review the court's ruling, not its rationale.  (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336; *California School of Culinary Arts v. Lujan* (2003) 112 Cal.App.4th 16, 22 [" 'the appellate court may affirm a summary judgment on any correct legal theory, as long as the parties had an adequate opportunity to address the theory in the trial court' "].)

   2.   *Aiding and Abetting Violations of FEHA*

Brown argues the trial court erred in granting summary judgment on his cause of action for aiding and abetting violations of FEHA.  Although not entirely clear, he appears to argue that triable issues of fact exist as to whether Metz and the Diamondbacks aided and abetted the River Cats in terminating his employment because of his race (§ 12940, subd. (a)) and failing to investigate or prevent discrimination or harassment by Metz and Nevin (§ 12940, subd. (k)).  We disagree.

Section 12940, subdivision (i) makes it unlawful for "any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or to attempt to do so."  FEHA does not define aiding and abetting, so California courts have adopted the common law definition.  (*Vernon v. State of California* (2004) 116 Cal.App.4th 114, 131; *Fiol v. Doellstedt* (1996) 50 Cal.App.4th 1318, 1325.)  Under this definition, a party may be liable for aiding and abetting a violation of FEHA if the party (1) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act, or (2) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.  (*Fiol, supra,* at pp. 1325-1326.)  For aiding and abetting liability to attach under either standard, the party must be shown to have had actual knowledge that a violation is being or will be committed.  (*Upasani v. State Farm General Ins. Co.* (2014) 227 Cal.App.4th 509, 519 [" 'California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially

9

assisted' "].)  With these principles in mind, we now consider the merits of Metz and the Diamondbacks' summary judgment motion.

As noted, the second amended complaint alleges that Metz and the Diamondbacks aided and abetted violations of FEHA by the River Cats in two ways.  First, the second amended complaint alleges that Metz and the Diamondbacks aided and abetted the unlawful termination of Brown.  Specifically, the second amended complaint alleges that Metz and Nevin complained about Brown to the River Cats and lobbied to have him fired.  Second, the second amended complaint alleges that Metz and the Diamondbacks aided and abetted the River Cats' failure to investigate or prevent discrimination or harassment by Metz and Nevin.  Specifically, the second amended complaint alleges that Brown reported his problems with Metz to the River Cats and the Diamondbacks in September 2014, but neither team conducted a meaningful investigation, and neither took steps to prevent Metz and Nevin from harassing Brown when the Reno Aces returned to Sacramento in 2015.

In moving for summary judgment, Metz and the Diamondbacks presented evidence that Metz thought the visitors' clubhouse was poorly managed and believed Brown was doing a bad job as clubhouse manager.  Metz and the Diamondbacks acknowledged that Metz complained about the condition of the visitors' clubhouse to Brown's supervisor in 2014, noting that Brown returned as clubhouse manager in 2015.  Metz and the Diamondbacks also acknowledged that Nevin was angry when he saw his shirt was wrinkled, and Metz was upset when he found the ice tub empty.  Metz and the Diamondbacks presented evidence that Metz called Brown's supervisor to complain about the empty ice tub.  Metz and the Diamondbacks also presented evidence that Metz was unaware of Brown's termination until he returned to Sacramento with the Reno Aces later in the 2015 season.  This evidence was sufficient to meet Metz and the Diamondbacks' initial burden to show that Brown could not establish a prima facie case of aiding and abetting, because nondiscriminatory complaints about the condition of the

10

visitors' clubhouse and Brown's performance as clubhouse manager cannot be said to constitute substantial assistance or encouragement to the River Cats in violating FEHA. (Cf. *Pinero v. Specialty Restaurants Corp.* (2005) 130 Cal.App.4th 635, 646 [" '[a] mere oral or written criticism of an employee . . . does not meet the definition of an adverse employment action under the FEHA' "].)

In opposing the motion, Brown presented evidence that Metz was rude and abusive from the start, offering demeaning asides about the condition of the visitors' clubhouse and thinly veiled criticisms of Brown's performance as clubhouse manager. Brown also presented evidence that Metz's complaints were unfounded or unfair, either because the visitors' clubhouse was not poorly managed, or because problems with the clubhouse were the result of the River Cats' failure to maintain the facility. Of greatest significance, Brown presented evidence that Metz called him a " 'lowlife clubby nigger' " at the end of the 2014 season and indicated he had taken steps to have Brown fired. This evidence, though troubling, nevertheless fails to raise a triable issue of material fact. Even assuming Metz made false complaints to give the River Cats a pretext to fire Brown in 2014, it is undisputed that they declined to do so, choosing instead to return Brown to the same position for the 2015 season. The evidence thus fails to raise a triable issue as to the existence of a primary violation of FEHA by the River Cats (i.e., a race-based termination), or causation (i.e., that Metz provided assistance or encouragement to the River Cats that was a substantial factor in causing harm to Brown). (See *American Master Lease LLC v. Idanta Partners, Ltd*. (2014) 225 Cal.App.4th 1451, 1476 [" ' [C]ausation is an essential element of an aiding and abetting claim, i.e., plaintiff must show that the aider and abettor provided assistance that was a substantial factor in causing the harm suffered' "].)

Brown also presented evidence that he reported the incident with Metz to the human resources directors for the both the River Cats and the Diamondbacks, and the human resources director for the Diamondbacks followed up with Metz and Nevin.

11

There is no evidence, however, that the human resources director for the Diamondbacks encouraged her counterpart, or anyone else associated with the River Cats, to be derelict in their duty to investigate and prevent harassment, discrimination, or retaliation. Likewise, there is no evidence that anyone associated with the Diamondbacks had actual knowledge of any failure to investigate or prevent violations of FEHA. (*Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138, 1145 ["liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted"].) Evidence that Brown reported Metz to the River Cats and the Diamondbacks in 2014 thus fails to raise a triable issue that Metz and the Diamondbacks provided substantial assistance to the River Cats in breaching their duty to investigate and prevent harassment, discrimination, and retaliation.

Turning to the 2015 season, Brown presented evidence that Metz and Nevin upbraided him for the empty ice tub and wrinkled shirt. According to Brown, Nevin said, " 'You are everything Metz said you were last year,' " a remark that could reasonably be understood to incorporate Metz's slur from the prior season. Brown also presented evidence that his supervisor, River Cats baseball operations manager Daniel Emmons, was present for the tirades by Metz and Nevin, but took no action to stop them. This evidence paints a picture of a humiliating ordeal, to be sure. But we cannot say the evidence was sufficient to raise a triable issue of material fact that Metz and the Diamondbacks aided and abetted the River Cats in breaching any duty to Brown. No evidence suggests Metz or Nevin encouraged or compelled Emmons to stand by as they heaped abuse on Brown. Likewise, no evidence suggests Metz or Nevin prevailed upon the River Cats to tolerate their angry outbursts, or knowingly participated in a scheme to interfere with the River Cats' duties. Thus, even assuming the ice tub and shirt tirades were racially motivated, and assuming further that the River Cats breached a duty to prevent harassment by Metz and Nevin, nothing suggests that Metz or the Diamondbacks aided or abetted any such breach. Evidence that Metz and Nevin berated Brown in

12

Emmons' presence thus fails to raise a triable issue that Metz and the Diamondbacks aided and abetted the River Cats in failing to prevent race-based harassment against him.

Brown also presented evidence that he reported the ice tub and shirt incidents to Savage by email dated June 20, 2015.[6] According to Brown, Savage and another River Cats employee came to the visitors' clubhouse the next day, "but they believed Nevin and Metz['s] complaints, not Brown." This evidence, too, fails to raise a triable issue of fact. That Metz and Nevin complained to Savage about the empty ice tub and wrinkled shirt does not, without more, reasonably give rise to an inference that they substantially assisted or encouraged the River Cats in terminating Brown on account of his race or failing to investigate and prevent discrimination or harassment against him. (Cf. *Pinero v. Specialty Restaurants Corp., supra,* 130 Cal.App.4th at p. 646.) Evidence that Metz and Nevin complained about Brown to Savage after the ice tub and shirt incidents thus fails to raise a triable issue of material fact.

Finally, Brown presented evidence that Jason Roberts, a trainer for the Round Rock Express, created a survey, which was circulated to all trainers in the Pacific Coast League (including, presumably, Metz). Brown also presented evidence that Savage had been told the survey was created in response to conditions at the visitors' clubhouse and believed the survey responses reflected poorly on Brown's performance as clubhouse manager. Brown makes much of the fact that the survey was conducted for the first time in 2015, but no evidence suggests that Metz or anyone else associated with the Diamondbacks played any role in the creation or circulation of the survey (other than, presumably, receiving and responding to it). And even assuming that Metz complained loudly and often enough to have been heard by Roberts, such that Metz could be said to

---

[6] Brown alleges Savage "failed to respond" to his email; however, he also acknowledges that Savage appeared at the visitors' clubhouse the next day. We believe Savage's appearance can reasonably be viewed as a response to Brown's email.

have had a hand in the survey, nothing suggests that Metz or anyone else associated with the Diamondbacks knew the survey results would be used to support Brown's termination.  Indeed, nothing suggests that Metz or anyone else associated with the Diamondbacks knew the River Cats were planning to terminate Brown for any reason, and nothing suggests Metz or anyone else associated with the Diamondbacks provided substantial assistance or encouragement to the River Cats to terminate Brown on the basis of race.  Summary judgment was therefore proper as to the Diamondbacks, and summary adjudication would be proper as to Metz.

       *3.*       *Violation of the Ralph Act*

Brown next argues the trial court erred in granting summary judgment on his Ralph Act cause of action.  Although again unclear, Brown appears to argue the trial court erred in finding the evidence that Metz used a racial epithet against him in 2014 insufficient to raise a triable issue as to whether Metz was substantially motivated by race when he threw an ice bucket at Brown in 2015.  This time, we agree with Brown.

The Ralph Act provides that all persons in California "have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51 [of the Unruh Act], or position in a labor dispute, or because another person perceives them to have one or more of those characteristics." (Civ. Code, § 51.7, subd. (b).)  To prevail on a Ralph Act cause of action, the plaintiff must show (1) the defendant threatened or committed a violent act against the plaintiff, (2) the plaintiff was harmed, (3) a substantial motivating reason for the defendant's conduct was his perception that the plaintiff was a member of a protected group, and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm. (*Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 880-881.)

The second amended complaint alleges Metz violated the Ralph Act by yelling and cursing at Brown, calling him a " 'low life clubby nigger,' " and throwing an ice tub (not a bucket) at him.[7]  The second amended complaint further alleges the thrown object struck Brown in the leg, causing unspecified harm.[8]

In moving for summary judgment, Metz presented evidence that he asked Brown to fill a therapeutic ice tub.  Metz also presented evidence that the ice tub was not filled, and Brown was found taking a break in his car.  According to Metz, Brown returned to the visitors' clubhouse, and Metz, "slid an ice cooler on the ground towards [Brown's] desk and told him to get the ice."  Metz presented evidence that the object, which was described as a five-gallon, plastic bucket, landed near Brown, but did not strike him.  Metz also presented evidence that the incident involved much yelling and cursing, but no racial slurs.  This showing was sufficient to shift the burden to Brown.

In opposing summary judgment, Brown presented evidence that Metz had previously called him a " 'low life clubby nigger,' " and Nevin said that he was " 'everything Metz said [he was] last year' " earlier in the day.  Brown also presented evidence that the ice bucket struck him in the leg.  The trial court found that Brown failed to raise a triable issue that the incident was racially motivated.  We disagree.  Viewing the evidence in the light most favorable to Brown, as we must, we conclude the evidence

---

[7] This allegation appears to have been an error.  The record reveals that a plastic bucket was used to transport ice from an ice machine to a large, therapeutic ice tub, used for soaking or bathing.  The tub does not appear to have been capable of being thrown by an ordinary person.

[8]  The second amended complaint also alleges violations of the Ralph Act based on damage to Brown's personal property.  These allegations appear to be directed to the River Cats, who are also named in the Ralph Act cause of action.

raises a triable issue of fact as to whether racial animus was a substantial motivating reason for Metz's conduct.[9]

Brown presented evidence that Metz used an especially offensive racial epithet against him at the end of the 2014 season. (*McGinest v. GTE Service Corp.* (9th Cir. 2004) 360 F.3d 1103, 1116 ["It is beyond question that the use of the word 'nigger' is highly offensive and demeaning, evoking a history of racial violence, brutality, and subordination"]; see also *Monteiro v. Tempe Union High School Dist.* (9th Cir. 1998) 158 F.3d 1022, 1030, fn. 12 ["We recognize that the term 'nigger,' as applied to blacks, is uniquely provocative and demeaning and that there is probably no word or phrase that could be directed at any other group that could cause comparable injury"].) Although there was no evidence that Metz used racially charged language on any other occasion, a reasonable jury could infer from his use of an egregious slur in 2014 that racial animus was a substantial motivating reason for his conduct in 2015. That Metz used the epithet only once, a year before, may weaken the inference of racial animus, but does not negate it.

In finding that Brown failed to raise a triable issue, the trial court observed: "The only race related connection [to the bucket throwing] is the claimed use of the 'n' word in 2014 almost a year prior to the incident alleged to have violated the Ralph Act."[10] We take a different view of the evidence. Despite the isolated nature of Metz's slur, and the

_____

[9] With respect to the other elements, we express no opinion as to whether Metz met his initial burden or Brown his responsive burden.

[10] The trial court also found unconvincing Brown's argument that Nevin's comment (" 'You are everything Metz said you were last year' ") could be viewed as incorporating Metz's use of the slur. We see this evidence differently as well. In our view, a reasonable jury could conclude both that Nevin's comment referred to Metz's earlier use of a racial epithet, and that Metz and Nevin had discussed Brown in racially derogatory terms.

16

passage of time, a reasonable jury could find that Metz called Brown an offensive name at the end of the 2014 season, expressed racial animus towards Brown in conversation with Nevin (leading Nevin to remark, " 'You are everything Metz said you were last year' "), and immediately resumed a campaign of harassment and intimidation upon returning to Sacramento for the 2015 season, yelling and cursing at Brown, and ultimately throwing a bucket at him. The fact that the slur was a singular occurrence does not preclude the possibility that racial animus was a substantial motivating reason for Metz's actions in throwing the bucket at Brown. (Cf. § 12923, subd. (b) ["A single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment"].) Likewise, the fact that the slur was remote in time from the act of throwing a bucket act does not, in our view, preclude the possibility that racial animus was a substantial motivating reason for the act, particularly inasmuch as Metz and Brown do not appear to have been in regular contact in the intervening period. Metz does not direct our attention to any authority suggesting that evidence of racial animus must be contemporaneous with a violent act or threat of a violent act to make out a prima facie case under the Ralph Act, and we decline to so hold. We therefore conclude that triable issues remain as to Brown's Ralph Act cause of action. The trial court erred in granting summary judgment in Metz's favor.

    *4.    Violation of the UCL*

Finally, Brown argues the trial court erred in granting summary judgment on the UCL cause of action. We disagree.

It is a violation of the UCL to engage in any "unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, § 17200.) " 'Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent.' " (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.) A cause of action brought under the UCL's "unlawful" prong

17

" ' "borrows" violations of other laws and treats them as unlawful practices' that the [UCL] makes independently actionable." (*Ibid.*) The "unfair" prong authorizes a cause of action for business practices that are "unfair" even if not specifically prohibited by another law. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1143.) Among other things, the "unfair" prong reaches a business practice that " 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.' " (*Smith v. State Farm Mut. Auto. Ins. Co.* (2001) 93 Cal.App.4th 700, 719.) As for the UCL's third prong, a business practice is "fraudulent" if " 'members of the public are likely to be deceived.' " (*Comm. on Children's Television, Inc. v. Gen. Foods Corp.* (1983) 35 Cal.3d 197, 211.) A plaintiff may pursue a UCL action in order to obtain either (1) injunctive relief, "the primary form of relief available under the UCL," or (2) restitution " 'as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.' " (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 319.) No other forms of relief are available to a private plaintiff in a UCL action. (*Korea Supply Co. v. Lockheed Martin Corp., supra*, at pp. 1146-1149.)

The second amended complaint relies on the "unlawful" and "unfair" prongs. The trial court rejected both theories. With respect to the "unlawful" prong, the trial court found that Brown failed to raise a triable issue as to the existence of a predicate violation for aiding and abetting violations of FEHA. With respect to the "unfair" prong, the trial court found that Brown failed to present evidence that the Diamondbacks engaged in anything that could be considered an unfair practice. The trial court also found that Brown failed to present evidence raising a triable issue as to whether he will be entitled to injunctive relief or restitution.

Brown does not meaningfully challenge any of these conclusions. He suggests that the Diamondbacks violated the "unfair" prong of the UCL by "fail[ing] to control the racial animosity" of Metz and Nevin, thereby causing harm to the game of baseball.

However, he does not identify evidence or authority that would support this theory, or explain how he could possibly be entitled to provisional relief for harm to the game of baseball. Brown's unformed arguments are insufficient to defeat the grant of summary judgment. " ' " 'Instead of a fair and sincere effort to show that the trial court was wrong, appellant's brief is a mere challenge to respondents to prove that the court was right.' " ' [Citation.] Therefore, plaintiff's contention that the trial court erred by granting defendants' motion for summary judgment is deemed waived." (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115-1116.)

In any case, as we have suggested, Brown's UCL cause of action is a derivative one. Because all of Brown's other causes of actions against the Diamondbacks fail, and because there was no showing that the Diamondbacks engaged in wrongdoing or could or should be secondarily liable for Metz's conduct in throwing an ice bucket at Brown, the UCL cause of action also fails. (*Aleksick v. 7-Eleven, Inc.* (2012) 205 Cal.App.4th 1176, 1185 ["When a statutory claim fails, a derivative UCL claim also fails"].) Summary judgment was properly granted.

## III. DISPOSITION

The judgment as to the Diamondbacks is affirmed, and the Diamondbacks are entitled to recover their costs on appeal from Brown. (Cal. Rules of Court, rule 8.278(a)(2).) The judgment as to Metz is reversed, and the matter remanded to the trial court with instructions to vacate the order granting summary judgment in favor of Metz and enter a new and different order granting the motion for summary adjudication of Brown's cause of action for aiding and abetting violations of FEHA against Metz, denying Metz's motion for summary judgment or adjudication in all other respects, and restoring the matter to the active case list to proceed on the merits. Brown is awarded his costs of appeal from Metz. (Cal. Rules of Court, rule 8.278(a)(3).)

/S/

_____

RENNER, J.

We concur:

/S/

_____

BLEASE, Acting P. J.

/S/

_____

DUARTE, J.